GEORGE F. MAY, SR., by the Guardian of His Person and His Estate, Mary Kay May, *et al.*, Plaintiffs-Appellees, v. WOOD RIVER TOWNSHIP HOSPITAL, Defendant-Appellant (R. Anthony Marrese *et al.*, Defendants).

Fifth District    No. 5—91—0848

Opinion filed January 21, 1994.—Rehearing denied March 9, 1994.

Ronald E. Fox, Rodney M. Sharp, and Beth Clemens Boggs, all of Sandberg, Phoenix & von Gontard, P.C., of St. Louis, Missouri, for appellant.

Roy C. Dripps, of The Lakin Law Firm, of Wood River, for appellees.

JUSTICE GOLDENHERSH[1] delivered the opinion of the court:

Plaintiffs, George F. May, Sr., by the guardian of his person and estate, Mary Kay May, and Mary Kay May, individually, filed a 20-count complaint against defendants, Wood River Township Hospital (hospital), R. Anthony Marrese, M.D., Ei Shun Lin, M.D., Wen K. Pan, M.D., Bone and Joint Surgeons, Inc., and Metropolitan Pain and Anesthesiology Consortium, on January 4, 1989. The counts of plaintiffs' complaint directed against the hospital alleged that it was negligent in providing care to George F. May, Sr., and that it was negligent in granting staff privileges to Dr. Marrese. The matter comes before this court by way of interlocutory appeal by defendant hospital of an order entered by the circuit court of Madison County on November 15, 1991. This order ruled on a motion to compel answers to interrogatories filed by plaintiffs and a motion for protective order filed by the hospital in connection with certain deposition questioning of Dr. Marrese and Eugene Cowsert, the hospital's former president. We affirm.

The hospital asserted a privilege pursuant to the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, pars. 8—2101 to 8—2105) (the

---

[1]Justice Henry Lewis participated in oral argument prior to his retirement; Justice Goldenhersh was later substituted on the panel.

Act), in response to certain of plaintiffs' interrogatories which were in question in the motion to compel. The hospital further asserted that deposition questioning of Dr. Marrese or Mr. Cowsert concerning conversations that took place between them prior to the date Dr. Marrese was granted staff privileges should not be permitted because the conversations were privileged pursuant to the Act. The hospital submitted a memorandum of law and an affidavit of the current president in support of its opposition to the interrogatories and in support of its motion for protective order. In that affidavit, the president stated that the hospital made Dr. Marrese a member of the associate staff in December 1983. Attached to the affidavit were copies of the hospital's bylaws in force at that time. The affiant further stated that all documents in his possession concerning granting of associate staff privileges to Dr. Marrese "are being kept in the course of internal quality control," and that the "granting and reviewing of staff privileges at [the hospital] is done to maintain and improve the quality of patient care." Following argument on November 15, 1991, the trial court denied the hospital's motion for protective order and granted plaintiffs' motion to compel, ordering the hospital to answer all plaintiffs' interrogatories "regarding any material or information generated by anyone on the Hospital's Executive Committee or from any other source so long as it was information generated or made before the date when Dr. Marrese was granted Associate Staff privileges."

The hospital sought leave to appeal from the November 15, 1991, order of the circuit court of Madison County, pursuant to Supreme Court Rule 308(b) (134 Ill. 2d R. 308(b)). This court granted leave to appeal on January 3, 1992. The question of law certified by the trial court under Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)) in its November 15, 1991, order, is stated as follows:

"[W]hether Sec. 8—2101 et seq. [of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 8—2101 et seq.)] provides any protection or in any way applies to the work, or communication of and between members of a Hospital's Committee charged with the responsibility for granting medical staff privileges to a Doctor, in this case [Wood River Township Hospital's] Executive Committee, whether or not said Committee work is aimed at internal quality control, or improving patient care at the Hospital."

The trial court ruled in its November 15, 1991, order that nothing related to work done or communications between executive committee members during their meetings or discussions related to Dr. Marrese is protected by the Act, nor are the minutes of the committee protected so long as this information existed or was created before the actual decision to grant privileges to Dr. Marrese. The court fur-

ther stated that no privilege exists under the Act as to review of a physician's qualification for medical staff privileges before said physician is actually on the hospital's staff.

■ Section 8—2101 provides, in pertinent part:

"All information, interviews, reports, statements, memoranda or other data of *** committees of licensed or accredited hospitals or their medical staffs, including *** Executive Committees *** used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges ***." (Ill. Rev. Stat. 1991, ch. 110, par. 8—2101.)

Our supreme court has found that the purpose of this legislation is "to ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care." (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 480, 468 N.E.2d 1162, 1168.) The supreme court also noted that the Act "is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." (*Jenkins*, 102 Ill. 2d at 480, 468 N.E.2d at 1168.) The supreme court has also stated:

"The purpose of the Act is to encourage candid and voluntary studies and programs used to improve hospital conditions and patient care or to reduce the rates of death and disease. To promote these goals the legislature provided that any materials used in such studies or programs shall be confidential." *Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937, 942.

Plaintiffs argue that peer review was not involved in the instant case because the materials sought in discovery concerned actions taken by the executive committee prior to the time Dr. Marrese was granted staff privileges. The hospital urges on appeal, however, that no Illinois case has interpreted the Act as being inapplicable to the credentialing process and notes that one court has held otherwise, citing *Mennes v. South Chicago Community Hospital* (1981), 100 Ill. App. 3d 1029, 427 N.E.2d 952. The reviewing court held in *Mennes* that discovery requests for all material regarding the granting of privileges to doctors who were defendants in a malpractice action were confidential and not subject to discovery under the Act. (*Mennes*, 100 Ill. App. 3d at 1031, 427 N.E.2d at 953.) The court noted in *Mennes* that if all staff appointment material could be obtained and used against the hospital whenever a plaintiff urged a negligent staff appointment theory, the statutory goal of candid commentary would be compromised. *Mennes*, 100 Ill. App. 3d at 1031, 427 N.E.2d at 953.

Plaintiffs argue, however, that since the *Mennes* decision Illinois courts have interpreted the Act as not embracing information concerning a physician's staff privileges and that such information is therefore discoverable. In support of this assertion plaintiffs cite *Richter v. Diamond* (1985), 108 Ill. 2d 265, 483 N.E.2d 1256, *Willing v. St. Joseph Hospital* (1988), 176 Ill. App. 3d 737, 531 N.E.2d 824, and *Ekstrom v. Temple* (1990), 197 Ill. App. 3d 120, 553 N.E.2d 424. Plaintiffs also note that this court clarified the scope of the statute in *Gleason v. St. Elizabeth Medical Center* (1985), 135 Ill. App. 3d 92, 481 N.E.2d 780, that the view of this court in *Gleason* was approved by the supreme court in *Richter*, and that *Gleason* does not support a determination that the information sought was privileged. We agree.

Our supreme court held in *Richter* that information sought by interrogatories concerning the nature and extent of restrictions imposed on a doctor's staff privileges at a defendant hospital is outside the scope of the Act and therefore subject to discovery. (*Richter v. Diamond*, 108 Ill. 2d at 268-69, 483 N.E.2d at 1257.) We had previously held in *Gleason* that interrogatories regarding the steps a defendant hospital took to supervise a codefendant doctor or to bar him from operating on patients at the hospital following the taking of depositions in other malpractice actions filed against the doctor did not seek information protected by the Act, and the information was therefore discoverable. We also held that interrogatories seeking disclosure of the names of people who provided information concerning the doctor prior to his admission to defendant hospital's staff did not fall within the scope of what is protected by the Act. We noted that the Act evinced a legislative intent to shield the review process itself, and not actions later taken in consequence of that process. *Gleason*, 135 Ill. App. 3d at 95, 481 N.E.2d at 781.

It is true that *Richter* narrowed the applicability of the Act so that, while the statutory privilege would apply to the peer-review process itself, the privilege will not extend to the imposition of restrictions that may result. In *Willing v. St. Joseph Hospital*, the court held that a physician's educational transcripts and applications for appointment to staff, as well as materials regarding the initial privileges granted to the physician and any modifications thereof, including restrictions and/or revocations, were not privileged under the Act, reasoning that these documents were antecedent or subsequent to the peer-review process. (*Willing*, 176 Ill. App. 3d at 743, 531 N.E.2d at 828-29.) Similarly, the court in *Ekstrom v. Temple* held that defendant doctors' applications for privileges which were antecedent to the peer-review process were not privileged under the Act, following the decision of the court in *Willing*. *Ekstrom*, 197 Ill. App. 3d at 129, 553 N.E.2d at 429.

Our supreme court has recently decided *Roach v. Springfield Clinic* (1993), 157 Ill. 2d 29, 623 N.E.2d 246. In *Roach* a baby was born with cerebral palsy and irreversible brain damage caused by delay in cesarean delivery. The trial court excluded testimony of a nurse-anesthetist relating comments to him by a doctor concerning the reasons for delay of the anesthesia team in the operation. After making this comment and reviewing reports, the doctor made a report to the department of anesthesia meeting. The trial court found the comment to be privileged under section 8—2101 (Ill. Rev. Stat. 1991, ch. 110, par. 8—2101). The appellate court affirmed (*Roach v. Springfield Clinic* (1991), 223 Ill. App. 3d 597, 585 N.E.2d 1070, and the supreme court reversed and remanded. The supreme court stated:

"The appellate court's analysis was premised on the proposition that the privilege encompasses any information obtained from an accredited hospital's medical staff and used for the purposes set forth in the statute. That is not so. What the law actually protects is not information of a hospital's medical staff, but information of '*committees* of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees ***.' (Emphasis added.) (735 ILCS 5/8—2101 (West 1992).) ***

Consistent with this discussion, this court has previously recognized that the law's purpose is to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care. The *statute is premised* on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues. *Richter v. Diamond* (1985), 108 Ill. 2d 265, 269[, 483 N.E.2d 1256]; *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 480[, 468 N.E.2d 1162].

In this case, there is no dispute that [the doctor's] discussions with [the nurse] had nothing to do with any physician peer-review committee." (Emphasis added.) *Roach*, 157 Ill. 2d at 39-40, 623 N.E.2d at 250-51.

The supreme court also dealt with the question of information later supplied to a committee:

"The information obtained by [the doctor] from [the nurse] in the course of his conversations was *not transformed* into 'information of' the anesthesiology department merely because [the doctor] reported the incident to that body sometime later. ***

*** If the simple act of furnishing a committee with earlier-acquired information were sufficient to cloak that information

with the statutory privilege, a hospital could effectively insulate from disclosure virtually all adverse facts known to its medical staff, with the exception of those matters actually contained in a patient's records. As a result, it would be substantially more difficult for patients to hold hospitals responsible for their wrongdoing through medical malpractice litigation. So protected, those institutions would have scant incentive for advancing the goal of improved patient care. The purpose of the act would be completely subverted.

Our appellate court has correctly observed that the statute was never intended to shield hospitals from potential liability. (*Marsh v. Lake Forest Hospital* (1988), 166 Ill. App. 3d 70, 76[, 519 N.E.2d 504].)" (Emphasis added.) *Roach*, 157 Ill. 2d at 41-42, 623 N.E.2d at 251.

■ Based on the above authorities, we hold that the information generated prior to Dr. Marrese's application for privileges, along with his application for privileges, is outside the scope of the Act and not privileged. This is true whether the committee reviewed the material or not. For example, suppose the hospital came into possession of a newspaper article written two years before Dr. Marrese applied for privileges. Assume further that this article concerns Dr. Marrese and is either complimentary or critical as the case may be. The mere fact that the committee considered the article cannot reasonably be held to make that otherwise nonprivileged article privileged. (*Roach v. Springfield Clinic* (1993), 157 Ill. 2d 29, 623 N.E.2d 246.) The same is true of a whole host of materials that might be considered by the committee; for example:

(1) The fact that staff privileges were granted, denied, or revoked at other hospitals.

(2) The fact that licenses to practice medicine were awarded, denied, suspended, or revoked in a given State.

(3) The fact that an applicant has been sued or has never been sued for malpractice.

All these matters and many others too numerous to mention are *facts*, facts that would exist independent of a peer-review process. These facts cannot possibly be privileged simply because a committee devoted to quality control or peer review considered them. That which is nonprivileged cannot be converted to being privileged simply by handing the facts to a committee.

On the other hand, if the committee sought to generate new opinions or information for consideration by the committee, a privilege could attach. For example, if the committee interviewed a colleague of Dr. Marrese to elicit an opinion on Dr. Marrese's ability as a physician, that opinion could be privileged. If, however, the

same opinion had been stated earlier in a deposition in a malpractice case and the committee reviewed the deposition, no privilege could attach to secrete the deposition from the discovery process, nor should the fact that it was considered be immune from discovery. Granting the privilege with respect to the interview would further the goals of the Act. Allowing the privilege with respect to the deposition would not further the interests the Act seeks to protect. Since the deposition was preexisting, the deponent's opinion was already memorialized whether the committee considered it or not.

The cases and examples cited above clearly establish that the evidence at issue in the instant appeal is outside the scope of the Act. Any material or information generated concerning Dr. Marrese before he was granted staff privileges at the hospital is therefore not privileged. Accordingly, we affirm the trial court's order compelling the hospital to answer plaintiff's interrogatories and its denial of the hospital's motion for protective order. The trial court is not precluded from conducting an *in camera* inspection of any particular material for which a privilege is claimed under the guidelines contained in this opinion; the hospital's blanket claim of privilege, however, would not be appropriate.

For the foregoing reasons, the order of the circuit court of Madison County is affirmed.

Affirmed.

MAAG,[2] J., concurs.

JUSTICE WELCH, dissenting:

I agree with the majority opinion that material or information *generated prior to Dr. Marrese's application* for staff privileges is not privileged under the Act even if considered by the executive committee in determining whether to grant Dr. Marrese's application for staff privileges. As the majority correctly points out, the mere fact that the committee considers such material does not make that otherwise nonprivileged material privileged.

However, I disagree with the majority's apparent conclusion that even *new* material and information *generated by the executive committee after Dr. Marrese's application for staff privileges, but before the granting of that application*, is not privileged. In my opinion, information or material *generated by the executive committee* is privileged under the Act *if it is generated and used by that committee in determining whether to grant staff privileges.*

The majority seems to conclude, as did the trial court, that any

---

[2]Justice Harrison participated in oral argument prior to his election to the supreme court; Justice Maag was later substituted on the panel.

material or information generated prior to the granting of staff privileges, no matter how or by whom generated, and even if generated after the application for privileges has been filed and by the executive committee in the process of determining whether or not to grant that application for privileges, cannot be privileged because the Act only applies after the granting of staff privileges. I simply cannot construe the Act this way.

It is my opinion that the legislature intended to afford confidentiality to the hospital's internal review process in the granting or denying of staff privileges when it specifically provided in section 8—2101 (Ill. Rev. Stat. 1991, ch. 110, par. 8—2101) that the confidential committee information, interviews, reports, statements, memoranda, or other data shall be used only for, *inter alia*, the granting of staff privileges. This interpretation is in keeping with the rules of statutory construction that this court is bound to give meaning and effect to all of the provisions of a statute and that the court must construe a statute so that no word, clause, or sentence, to the extent that it is possible to do so, is rendered superfluous or meaningless and that the court, if possible, is required to give each word, clause, or sentence some reasonable meaning. (*Walker v. Alton Memorial Hospital Association* (1980), 91 Ill. App. 3d 310, 313, 414 N.E.2d 850, 852.) Any other construction of the Act would render superfluous and without reasonable meaning the reference therein to the granting of staff privileges.

It is my further opinion that the internal review process of the hospital's executive committee which transpires before it renders a decision on the granting of staff privileges can be as much a part of hospital quality control, in attempting to assure that staff privileges are only accorded to competent physicians, as the internal review process of a doctor's performance which transpires after the granting of staff privileges.

Accordingly, I would have reversed the order of the trial court, which established a bright-line rule that any material or information generated prior to the granting of staff privileges is not privileged under the Act, no matter how or by whom generated. I would have remanded this cause to the trial court for its determination as to what material and information was generated by the executive committee in the process of evaluating Dr. Marrese's application for staff privileges. Any such material and information is, in my opinion, privileged under the Act even if generated prior to the granting of staff privileges. See *Roach v. Springfield Clinic* (1993), 157 Ill. 2d 29, 623 N.E.2d 246.