Mary LARSON, et al., Appellants,

v.

James Preston WASEMILLER, M.D.,
Respondent (A05–1698),

Paul Scot Wasemiller, M.D.,
et al., Defendants,

St. Francis Medical Center,
Respondent (A05–1701).

Nos. A05–1698, A05–1701.

Supreme Court of Minnesota.

Aug. 16, 2007.

Rehearing Denied Sept. 20, 2007.

Terry L. Wade, William J. Maddix, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, MN, for appellants.

Louise Dovre Bjorkman, Mark Solheim, Larson King, LLP, Saint Paul, MN, M. Daniel Vogel, Vogel Law Firm, Fargo, ND, for Respondent/Defendant James P. Wasemiller.

Rodger A. Hagen, William M. Hart, Erica Gutmann Strohl, Meagher & Geer, P.L.L.P., Minneapolis, MN, for Defendant Paul S. Wasemiller and Dakota Clinic, Ltd.

Robert Mahoney, Mark W. Hardy, Geraghty, O'Loughlin & Kenney, Saint Paul, MN, for Respondent St. Francis Medical Center.

Mark Whitmore, Charles E. Lundberg, Bassford Remele, Minneapolis, MN, for MN Hospital Association, MN Medical Association, American Medical Association.

Diane B. Bratvold, Briggs and Morgan, P.A., Minneapolis, MN, for MN Defense Lawyers Association.

## OPINION

HANSON, Justice.

Appellants Mary and Michael Larson commenced this medical malpractice claim against respondent Dr. James Wasemiller, Dr. Paul Wasemiller and the Dakota Clinic for negligence in connection with the performance of gastric bypass surgery on Mary Larson. The Larsons also joined respondent St. Francis Medical Center as a defendant, claiming, among other things, that St. Francis was negligent in granting surgery privileges to Dr. James Wasemiller. St. Francis then moved to dismiss for failure to state a claim. The district court denied the motion to dismiss, holding that Minnesota does recognize a claim for negligent credentialing, but certified two questions to the court of appeals. The court of appeals reversed the district court's denial of the motion to dismiss, holding that Minnesota does not recognize a common-law cause of action for negligent credentialing. *Larson v. Wasemiller,* 718 N.W.2d 461, 467–68 (Minn.App.2006). We reverse and remand to the district court for further proceedings.

In April 2002, Dr. James Wasemiller, with the assistance of his brother, Dr. Paul Wasemiller, performed gastric bypass surgery on Mary Larson at St. Francis Medical Center in Breckenridge, Minnesota. Larson experienced complications following the surgery, and Dr. Paul Wasemiller performed a second surgery on April 12, 2002 to address the complications. On April 22, 2002, after being moved to a long-term care facility, Larson was transferred to MeritCare Hospital for emergency surgery. Larson remained hospitalized until June 28, 2002.

The Larsons claim that St. Francis was negligent in credentialing Dr. James P. Wasemiller. Credentialing decisions determine which physicians are granted hospital privileges and what specific procedures they can perform in the hospital. *See* Craig W. Dallon, *Understanding Judicial Review of Hospitals' Physician Credentialing and Peer Review Decisions,* 73 Temp. L.Rev. 597, 598 (2000). The granting of hospital privileges normally does not create an employment relationship with the hospital, but it allows physicians access to the hospital's facilities and imposes certain professional standards. *Id.* at 605. The decision to grant hospital privileges to a physician is made by the hospital's governing body based on the recommendations of the credentials committee. A credentials committee is a type of peer review committee. Minnesota, like most other states, has a peer review statute that provides for the confidentiality of peer review proceedings and grants some immunity to those involved in the credentialing process. Minn.Stat. §§ 145.61–.67 (2006).

The district court noted that the majority of courts in other jurisdictions have recognized a duty on the part of hospitals to exercise reasonable care in granting privileges to physicians to practice medicine at the hospital. The court also noted that the existence of such a duty is objectively reasonable and consistent with public policy. The court therefore held that Minnesota "will and does recognize, at common law, a professional tort against hospitals and review organizations for negligent credentialing/privileging."

After denying St. Francis' motion to dismiss, the district court certified the following two questions to the court of appeals:

A. Does the state of Minnesota recognize a common law cause of action of privileging of a physician against a hospital or other review organization?

B. Does Minn.Stat. §§ 145.63–145.64 grant immunity from or otherwise limit liability of a hospital or other review organization for a claim of negligent credentialing/privileging of a physician?

The court of appeals held that Minnesota does not recognize a common law cause of action for negligent credentialing of a physician against a hospital, and noted that the confidentiality mandate of Minn. Stat. § 145.64 "limits the evidence that could be used to support or defend against such a claim in a manner that appears to affect the fundamental fairness of recognizing such a claim * * *." *Wasemiller,* 718 N.W.2d at 470. The court appropriately deferred to this court or to the legislature to address the complex policy concerns involved. *Id.* at 468.

In response to the second certified question, the court of appeals held that the plain language of Minn.Stat. §§ 145.63–.64 does not grant immunity to a hospital or other review organization from liability for a claim of negligent credentialing of a physician, but that the statute does limit the liability of hospitals or other review organizations "to actions or recommendations not made in the reasonable belief that the action or recommendation is warranted by facts known to it after reasonable efforts to ascertain the facts on which its action or recommendation is made." *Wasemiller,* 718 N.W.2d at 469–70. Neither party challenges the court of appeals' answer to the second certified question.

 The Larsons sought review of the court of appeals holding that Minnesota does not recognize a claim for negligent credentialing. This court reviews de novo

the denial of a motion to dismiss for failure to state a claim. *Hauschildt v. Beckingham,* 686 N.W.2d 829, 836 (Minn.2004). Certified questions are questions of law that this court also reviews de novo. *Fedziuk v. Comm'r of Pub. Safety,* 696 N.W.2d 340, 344 (Minn.2005).

 We turn to the first certified question—whether Minnesota recognizes a cause of action for negligent credentialing. In determining whether Minnesota recognizes a particular cause of action this court must look to the common law and any statutes that might expand or restrict the common law. This court has the power to recognize and abolish common law doctrines, *Lake v. Wal–Mart Stores, Inc.,* 582 N.W.2d 231, 233 (Minn.1998), as well as to define common law torts and their defenses, *Schumann v. McGinn,* 307 Minn. 446, 467, 240 N.W.2d 525, 537 (1976). It is also the province of the legislature to modify the common law, *Jung v. St. Paul Fire Dep't Relief Ass'n,* 223 Minn. 402, 405, 27 N.W.2d 151, 153 (1947), but statutes are presumed not to alter or modify the common law unless they expressly so provide, *Agassiz & Odessa Mut. Fire Ins. Co. v. Magnusson,* 272 Minn. 156, 166, 136 N.W.2d 861, 868 (1965).

A. *Does Minnesota's peer review statute create a cause of action for negligent credentialing?*

We consider, first, whether the language of the peer review statute actually creates a cause of action for negligent credentialing. Section 145.63, subd. 1, provides that

*No review organization and no person shall be liable for damages or other relief in any action by reason of the performance of the review organization or person of any duty, function, or activity as a review organization or a member of a review committee or by reason of*

any recommendation or action of the review committee *when the person acts in the reasonable belief that the action or recommendation is warranted by facts known to the person or the review organization after reasonable efforts to ascertain the facts upon which the review organization's action or recommendation is made * * *.*

(emphasis added.) The legislature has the authority to create a cause of action for negligent credentialing. The question is whether section 145.63, subdivision 1, expresses an intent to do so.

Although stated in the negative, the language of this statute implies that a review organization shall be liable for granting privileges where the grant is not reasonably based on the facts that were known or that could have been known by reasonable efforts. This language could be read as evidencing the legislative intent to establish such a cause of action, whether or not one existed at common law.

■ We agree with the Larsons that the immunity provision of the peer review statute contemplates the existence of a cause of action for negligent credentialing—otherwise there would be no need for the legislature to address the standard of care applicable to such an action. But we are reluctant to conclude that the statute affirmatively creates such a cause of action because the standard of care is stated in the negative.[1]

Ultimately, we need not determine whether the statute creates a cause of action because, at the very least, the statute does not negate or abrogate such a cause of action and this leaves us free to consider whether the cause of action exists at common law.

### B. Is there a common law cause of action for negligent credentialing?

■ In deciding whether to recognize a common law tort, this court looks to (1) whether the tort is inherent in, or the natural extension of, a well-established common law right, (2) whether the tort has been recognized in other common law states, (3) whether recognition of a cause of action will create tension with other applicable laws, and (4) whether such tension is out-weighed by the importance of the additional protections that recognition of the claim would provide to injured persons. *See Wal–Mart Stores,* 582 N.W.2d at 234–36 (joining the majority of states that recognize the tort of invasion of privacy as inherent in property, contract and liberty rights, but declining to recognize the tort of false light because it would increase the tension between tort law and constitutional free speech guaranties).

### 1. Is the tort of negligent credentialing inherent in, or the natural extension of, a well-established common law right?

Amici curiae, Minnesota Hospital Association, et al. (MHA), argue that a claim for negligent credentialing is at odds with the common law of vicarious liability in Minnesota, which makes hospitals liable for the negligence of employees, but does not regard independent physicians as employees merely because they are granted hospital privileges.[2] But the Larsons ar-

---

**1.** When a question of statutory construction involves a failure of expression rather than an ambiguity of expression, "courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature." *Genin v.1996 Mercury Marquis,* 622 N.W.2d 114, 117 (Minn.2001) (*quoting State v. Moseng,* 254 Minn. 263, 269, 95 N.W.2d 6, 11–12 (1959)).

**2.** MHA suggests that recognition of this tort would effectively overrule *McElwain v. Van*

gue that the tort of negligent credentialing is not a vicarious liability claim, but rather is grounded in a hospital's direct liability at common law under its duty to exercise reasonable care in the provision of health services and its duty to protect patients from harm by third persons.

Amicus curiae, Minnesota Defense Lawyers Association (MDLA), argues that hospital credentialing is aimed at protecting the general public and the hospital itself, not a particular class of persons, and that under *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801 (Minn.1979), breach of a duty owed to the general public cannot be the basis of liability. They also argue that this court has never recognized a special duty between a hospital and a patient outside the context of direct patient services.

But we have recognized that hospitals owe a duty of care directly to patients to protect them from harm by third persons. In *Sylvester v. Northwestern Hospital of Minneapolis,* we held that a hospital had a duty to protect a patient from another intoxicated patient. 236 Minn. 384, 389–90, 53 N.W.2d 17, 20–21 (1952). We quoted from the Restatement of Torts § 320 (1934) as follows:

> One who * * * voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty of exercising reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor,

> (a) knows or has reason to know that he has the ability to control the conduct of the third persons, and

> (b) knows or should know of the necessity and opportunity for exercising such control.

*Id.* at 387, 53 N.W.2d at 19. In *Erickson v. Curtis Inv. Co.,* we cited *Sylvester* and noted that the duty to protect in the innkeeper/guest and common carrier/passenger relationship is analogous to that in the hospital/patient relationship. 447 N.W.2d 165, 168 (Minn.1989). We have also noted that a hospital has a duty to its patients to provide a sufficient number of attendants as the patients' safety may require. *Mulliner v. Evangelischer Diakonniessenverein of the Minn. Dist. of the German Evangelical Synod of N. Am.,* 144 Minn. 392, 394, 175 N.W. 699, 699–700 (1920).

Two other generally recognized common law torts also support recognition of the tort of negligent credentialing. The claim of negligent credentialing is analogous to a claim of negligent hiring of an employee, which has been recognized in Minnesota. *See Ponticas v. K.M.S. Invs.,* 331 N.W.2d 907, 909–11 (Minn.1983) (recognizing a claim for negligent hiring brought by a tenant against the owner of her apartment complex after the tenant was raped by the apartment manager who had a criminal record which included burglary and armed robbery). *See also* Restatement (Second) of Agency § 213 (1958) ("A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless * * * in the employment of improper persons or instrumentalities in work involving risk of harm to others * * *."). Some jurisdictions that recognize the tort of negligent credentialing do

---

*Beek,* where the court of appeals held that "a hospital can only be held vicariously liable for a physician's acts if the physician is an employee of the hospital." 447 N.W.2d 442, 446 (Minn.App.1989).

so as a natural extension of the tort of negligent hiring. *See, e.g., Domingo v. Doe,* 985 F.Supp. 1241, 1244–45 (D.Haw. 1997); *Taylor v. Singing River Hosp. Sys.,* 704 So.2d 75, 78 n. 3 (Miss.1997); *Rodrigues v. Miriam Hosp.,* 623 A.2d 456, 462–63 (R.I.1993).

The tort of negligent credentialing is perhaps even more directly related to the tort of negligent selection of an independent contractor, which has been recognized in the Restatement of Torts to exist under certain circumstances. The Restatement (Second) of Torts § 411 (1965) provides that

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
>
> (b) to perform any duty which the employer owes to third persons.

Although we have not specifically adopted this tort, we have frequently relied on the Restatement of Torts to guide our development of tort law in areas that we have not previously had an opportunity to address. *See, e.g., Schafer v. JLC Food Sys., Inc.,* 695 N.W.2d 570, 575 (Minn.2005) (adopting section 7 of the Proposed Final Draft No. 1, Restatement (Third) of Torts: Products Liability (1998), which recognizes reasonable consumer expectations in food products liability cases); *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 438–39 (Minn.1983) (adopting section 46(1) of the Restatement (Second) of Torts, which defines the elements necessary to prove intentional infliction of emotional distress). Some of the courts that have recognized the tort of negligent credentialing do so as an application of the tort of negligent selection of an independent contractor. *See, e.g., Albain v. Flower Hosp.,* 50 Ohio St.3d 251, 553 N.E.2d 1038, 1045 (1990); *Corleto v. Shore Mem'l Hosp.,* 138 N.J.Super. 302, 350 A.2d 534, 537–38 (1975).

Given our previous recognition of a hospital's duty of care to protect its patients from harm by third persons and of the analogous tort of negligent hiring, and given the general acceptance in the common law of the tort of negligent selection of an independent contractor, as recognized by the Restatement of Torts, we conclude that the tort of negligent credentialing is inherent in and the natural extension of well-established common law rights.

2. *Is the tort of negligent credentialing recognized as a common law tort by a majority of other common law states?*

At least 27 states recognize the tort of negligent credentialing,[3] and at least

---

**3.** *See Domingo v. Doe,* 985 F.Supp. 1241, 1244–45 (D.Haw.1997); *Crumley v. Mem'l Hosp., Inc.,* 509 F.Supp. 531, 535 (E.D.Tenn. 1978); *Humana Med. Corp. of Ala. v. Traffanstedt,* 597 So.2d 667, 668–69 (Ala.1992); *Fletcher v. S. Peninsula Hosp.,* 71 P.3d 833, 842 (Alaska 2003); *Tucson Med. Ctr., Inc., v. Misevch,* 113 Ariz. 34, 545 P.2d 958, 960 (1976); *Elam v. College Park Hosp.,* 132 Cal. App.3d 332, 183 Cal.Rptr. 156, 160 (1982); *Kitto v. Gilbert,* 39 Colo.App. 374, 570 P.2d 544, 550 (1977); *Insinga v. LaBella,* 543 So.2d 209, 214 (Fla.1989); *Mitchell County Hosp. Auth. v. Joiner,* 229 Ga. 140, 189 S.E.2d 412, 414 (1972); *May v. Wood River Twp. Hosp.,* 257 Ill.App.3d 969, 195 Ill.Dec. 862, 629 N.E.2d 170, 171 (1994); *Winona Mem'l Hosp., Ltd. P'ship v. Kuester,* 737 N.E.2d 824, 828 (Ind.Ct.App.2000); *Ferguson v. Gonyaw,* 64 Mich.App. 685, 236 N.W.2d 543, 550 (1975); *Taylor v. Singing River Hosp. Sys.,* 704 So.2d 75, 78 n. 3 (Miss.1997); *Corleto,* 350 A.2d at 537–38; *Diaz v. Feil,* 118 N.M. 385, 881 P.2d 745, 749 (1994); *Sledziewski v. Cioffi,* 137 A.D.2d 186, 528 N.Y.S.2d 913, 915 (N.Y.App.Div.1988); *Blanton v. Moses H. Cone Mem'l Hosp., Inc.,* 319 N.C. 372, 354 S.E.2d 455, 458 (1987); *Albain,* 553 N.E.2d

three additional states recognize the broader theory of corporate negligence, even though they have not specifically identified negligent credentialing.[4] In fact, only two courts that have considered the claim of negligent credentialing have outright rejected it.[5] The Larsons argue that this broad recognition of the claim evidences a national consensus that hospitals owe a common law duty to patients to exercise reasonable care when making privileging decision.

The decisions of other states that recognize the tort of negligent credentialing rely on various rationales, which essentially fall into the following groups.

*Direct or Corporate Negligence*

Some courts have recognized the tort of negligent credentialing as simply the application of broad common law principles of negligence. *See, e.g., Johnson v. Misericordia Cmty. Hosp.,* 99 Wis.2d 708, 301 N.W.2d 156, 163–64 (1981) (noting that harm to patients is foreseeable if hospitals fail to properly evaluate and monitor staff physicians); *Blanton v. Moses H. Cone Mem'l Hosp., Inc.,* 319 N.C. 372, 354 S.E.2d 455, 457 (1987) (noting that corporate negligence "is no more than the application of common law principles of negligence"); *Elam v. College Park Hosp.,* 132 Cal.App.3d 332, 183 Cal.Rptr. 156, 160 (1982) ("[T]he primary consideration is the forseeability of the risk.").

In *Pedroza v. Bryant,* the Washington Supreme Court explained the policy reasons for adopting the theory of corporate negligence.

The doctrine of corporate negligence reflects the public's perception of the mod-

at 1045; *Strubhart v. Perry Mem'l Hosp. Trust Auth.,* 903 P.2d 263, 276 (Okla.1995); *Welsh v. Bulger,* 548 Pa. 504, 698 A.2d 581, 586 (1997); *Rodrigues v. Miriam Hosp.,* 623 A.2d 456, 462–63 (R.I.1993); *Garland Cmty. Hosp. v. Rose,* 156 S.W.3d 541, 545–46 (Tex.2004); *Wheeler v. Cent. Vt. Med. Ctr. Inc.,* 155 Vt. 85, 582 A.2d 165, 166 (1989); *Pedroza v. Bryant,* 101 Wash.2d 226, 677 P.2d 166, 168–70 (1984); *Roberts v. Stevens Clinic Hosp., Inc.,* 176 W.Va. 492, 345 S.E.2d 791, 798 (1986); *Johnson v. Misericordia Cmty. Hosp.,* 99 Wis.2d 708, 301 N.W.2d 156, 164 (1981); *Greenwood v. Wierdsma,* 741 P.2d 1079, 1088 (Wyo.1987).

**4.** *See Gridley v. Johnson,* 476 S.W.2d 475, 484–85 (Mo.1972); *Benedict v. St. Luke's Hosps.,* 365 N.W.2d 499, 504 (N.D.1985); *Simmons v. Tourney Reg. Med. Cr.,* 330 S.C. 115, 498 S.E.2d 408, 410 (1998). The terms "negligent credentialing" and "corporate negligence" are both used to describe the tort in question in this case. However, the concept of "corporate negligence" is broader than the concept of "negligent credentialing" in that corporate negligence includes acts of direct hospital negligence, such as negligence in supervising patient care or in failing to enforce hospital guidelines regarding patient care. *See, e.g., Darling v. Charleston Cmty. Mem'l*

*Hosp.,* 33 Ill.2d 326, 211 N.E.2d 253, 258 (1965) (hospital could be liable for not having enough nurses for bedside care and for failing to require consultation with surgical staff); *Diaz,* 881 P.2d at 749 (hospital could be liable for failing to timely consult with another physician when the patient's physician did not respond to calls); *Bost v. Riley,* 44 N.C.App. 638, 262 S.E.2d 391, 397 (N.C.Ct.App.1980) (hospital could be liable for not enforcing its rule requiring physicians to keep progress notes); *Thompson v. Nason Hosp.,* 527 Pa. 330, 591 A.2d 703, 709 (1991) (hospital could be liable for negligently supervising the quality of care received by a patient who came to the emergency room).

**5.** *See Svindland v. A.I. DuPont Hosp. for Children of Nemours Found.,* No. 05–0417, 2006 WL 3209953, * 3–4 (E.D.Pa. Nov.3, 2006) (holding that a claim of negligent credentialing is precluded by Delaware's peer review statute); *McVay v. Rich,* 255 Kan. 371, 874 P.2d 641, 645 (1994) (finding an express statutory bar to a claim of negligent credentialing). *See also Gafner v. Down East Cmty. Hosp.,* 735 A.2d 969, 979 (Me.1999) (refusing to recognize a claim of corporate negligence for the hospital's failure to adopt policies controlling the actions of independent physicians).

ern hospital as a multifaceted health care facility responsible for the quality of medical care and treatment rendered. The community hospital has evolved into a corporate institution, assuming "the role of a comprehensive health center ultimately responsible for arranging and coordinating total health care."

101 Wash.2d 226, 677 P.2d 166, 169 (1984) (quoting Arthur F. Southwick, *The Hospital as an Institution—Expanding Responsibilities Change Its Relationship with the Staff Physician*, 9 Cal. W.L.Rev. 429, 429 (1973)). The *Pedroza* court went on to say:

> To implement this duty of providing competent medical care to the patients, it is the responsibility of the institution to create a workable system whereby the medical staff of the hospital continually reviews and evaluates the quality of care being rendered within the institution ... * * *. The hospital's role is no longer limited to the furnishing of physical facilities and equipment where a physician treats his private patients and practices his profession in his own individualized manner.

677 P.2d at 169 (quoting *Moore v. Bd. of Trustees of Carson—Tahoe Hosp.*, 88 Nev. 207, 495 P.2d 605, 608 (1972)).

*Duty of Care for Patient Safety*

Some courts have considered the tort of negligent credentialing to be an extension of previous decisions that hospitals have a duty to exercise ordinary care and attention for the safety of their patients. *See, e.g., Strubhart v. Perry Mem'l Hosp. Trust Auth.*, 903 P.2d 263, 276 (Okla.1995) (holding that a hospital's duty to ensure that only competent physicians are granted staff privileges is merely a reasonable expansion of the general duty of hospitals to exercise ordinary care for the safety of their patients); *Garland*, 156 S.W.3d at 545–46 (holding that a hospital's creden-

tialing activities are "an inseparable part of the medical services received by patients"); *Elam*, 183 Cal.Rptr. at 161 (noting that case precedent establishes that a hospital has a duty to protect patients from harm and that a hospital's failure to insure the competence of its medical staff creates an unreasonable risk of harm to patients).

*Negligent Hiring*

Some courts view the tort of negligent credentialing as the natural extension of the tort of negligent hiring. *See, e.g., Rodrigues v. Miriam Hosp.*, 623 A.2d 456, 463 (R.I.1993) (noting that the liability of a hospital for negligent credentialing is analogous to the liability of an employer for negligent hiring, which is premised on the "failure to exercise reasonable care in selecting a person who the employer knew or should have known was unfit or incompetent for the employment, thereby exposing third parties to an unreasonable risk of harm"); *Domingo v. Doe*, 985 F.Supp. 1241, 1245 (D.Haw.1997) (noting that hospitals are in a superior position to monitor and control physician performance and that the rationale underlying a cause of action for negligent hiring is the same as the rationale underlying a cause of action for negligent credentialing).

*Negligent Selection of Independent Contractors*

Some courts have relied on the "well-established principle" that an employer must exercise reasonable care in the selection of a competent independent contractor, as outlined in Restatement (Second) of Torts § 411. *See, e.g., Corleto*, 350 A.2d at 537; *Albain*, 553 N.E.2d at 1045. In *Albain*, the court concluded that in a hospital setting, this rule "translates into a duty by the hospital only to grant and to continue staff privileges of the hospital to competent physicians." 553 N.E.2d at 1045.

The court also noted that a physician's negligence does not automatically mean that the hospital is liable, rather, a plaintiff must demonstrate that but for the hospital's failure to exercise due care in granting staff privileges, the plaintiff would not have been injured. *Id.* at 1045.

Courts that have allowed claims for negligent credentialing have, either implicitly or explicitly, held that such claims are unrelated to the concept of derivative or vicarious liability. *See, e.g., Corleto,* 350 A.2d at 537 ("Liability does not attach vicariously but because of the wrongful act in placing an incompetent in a position to do harm"); *Browning v. Burt,* 66 Ohio St.3d 544, 613 N.E.2d 993, 1003 (1993) (stating that negligent-credentialing claims "have nothing to do with any issue concerning derivative liability of the hospital for the acts of its agent or employee-physician"); *Albain,* 553 N.E.2d at 1046 ("[A] physician's negligence does not automatically mean that the hospital is liable * * *."); *Pedroza,* 677 P.2d at 168–71 (corporate negligence imposes on the hospital a nondelegable duty owed directly to the patient, regardless of the details of the doctor-hospital relationship).

We conclude that the tort of negligent credentialing is recognized as a common law tort by a substantial majority of the other common law states.

> *3. Would the tort of negligent credentialing conflict with Minnesota's peer review statute?*

St. Francis argues that the fact that a majority of other jurisdictions have recognized a negligent-credentialing claim is not dispositive because such a claim would conflict with Minnesota's peer review statute. Minnesota's peer review statute contains both confidentiality and limited liability provisions. Minn.Stat. §§ 145.61–.67 (2006).

*The Confidentiality Provision*

▮ The confidentiality provision of the peer review statute provides in part that

> [D]ata and information acquired by a review organization, in the exercise of its duties and functions, or by an individual or other entity acting at the direction of a review organization, shall be held in confidence, shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization, and shall not be subject to subpoena or discovery. No person described in section 145.63 shall disclose what transpired at a meeting of a review organization except to the extent necessary to carry out one or more of the purposes of a review organization. The proceedings and records of a review organization shall not be subject to discovery or introduction into evidence in any civil action against a professional arising out of the matter or matters which are the subject of consideration by the review organization.

Minn.Stat. § 145.64, subd. 1 (2006). Credentialing committees are "review organizations" under the statutory definition. Minn.Stat. § 145.61, subd. 5(i) (2006). Any unauthorized disclosure of the above information is a misdemeanor. Minn.Stat. § 145.66 (2006).

St. Francis argues that the prohibition on disclosing what information a credentialing committee relied upon precludes a claim of negligent credentialing because the precise fact question to be tried in a negligent-credentialing case is whether the hospital was negligent in making the decision on the basis of what it *actually knew* at the time of the credentialing decision. It argues that the confidentiality provision therefore makes it impossible for a hospital to defend against such a claim.

■ St. Francis' interpretation of the common law claim is too narrow because negligence could be shown on the basis of what was actually known or what *should have been known* at the time of the credentialing decision. *See Diaz*, 881 P.2d at 750 (should have known); *Corleto*, 350 A.2d at 538 (had reason to know); *Albain*, 553 N.E.2d at 1046 (had reason to know). And Minnesota's confidentiality provision recognizes this broader concept, and addresses the problems of proof, by providing that

[i]nformation, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization, nor shall any person who testified before a review organization or who is a member of it be prevented from testifying as to matters within the person's knowledge, but a witness cannot be asked about the witness' testimony before a review organization or opinions formed by the witness as a result of its hearings.

Minn.Stat. § 145.64, subd. 1.

Thus, although section 145.64, subdivision 1 would prevent hospitals from disclosing the fact that certain information was considered by the credentials committee, it would not prevent hospitals from introducing the same information, as long as it could be obtained from original sources. In this respect, the confidentiality provision may provide a greater advantage to hospitals than to patients because a hospital knows what information it actually considered and why it granted privileges and it may emphasize the information that most strongly supports its decision. The difficulty of proof may fall most heavily on the patients because the effect of the statute is to preclude the discovery of what evidence was actually obtained by the hos-

pital in the credentialing process, and the patients bear the burden of proof on negligence.

Both Ohio and Wyoming have rejected the argument that the confidentiality provisions of their peer review statutes preclude a claim of negligent credentialing. Relying on the "original source" and "matters within a person's knowledge" exceptions to the confidentiality requirement, the Supreme Court of Ohio rejected the argument that the confidentiality provision of Ohio's peer review statute would prevent a hospital from defending itself against a claim of negligent credentialing. *Browning v. Burt*, 66 Ohio St.3d 544, 613 N.E.2d 993, 1007 (1993). In holding that similar confidentiality provisions do not preclude a claim for negligent credentialing, the Supreme Court of Wyoming reasoned that "[i]f the legislature had wanted to prohibit actions against hospitals for breaching their duties to properly supervise the qualifications and privileges of their medical staffs, it would have done so expressly. We will not construe the privilege statute to impliedly prohibit this category of negligence actions." *Greenwood v. Wierdsma*, 741 P.2d 1079, 1088 (Wyo.1987) (citations omitted).

Although the confidentiality provision of Minnesota's peer review statute may make the proof of a common law negligent-credentialing claim more complicated, we conclude that it does not preclude such a claim.

*The Limited Liability Provision*

■ Minn.Stat. § 145.63, subd. 1 (2006) provides some immunity from liability, both for individual credentials committee members and hospitals, for claims brought by either a physician or a patient. Section 145.63, subdivision 1 provides that

No review organization and no person who is a member or employee, director, or officer of, who acts in an advisory

capacity to, or who furnishes counsel or services to, a review organization shall be liable for damages or other relief in any action brought by a person or persons whose activities have been or are being scrutinized or reviewed by a review organization, by reason of the performance by the person of any duty, function, or activity of such review organization, unless the performance of such duty, function or activity was motivated by malice toward the person affected thereby. No review organization and no person shall be liable for damages or other relief in any action by reason of the performance of the review organization or person of any duty, function, or activity as a review organization or a member of a review committee or by reason of any recommendation or action of the review committee when the person acts in the reasonable belief that the action or recommendation is warranted by facts known to the person or the review organization after reasonable efforts to ascertain the facts upon which the review organization's action or recommendation is made.

St. Francis argues that this limitation on liability raises the threshold for permitted claims against review organizations, precluding recovery for simple negligence. The Larsons argue that the second sentence of section 145.63 is merely a codification of the common law standard of care for hospitals, and that the language of the provision actually contemplates a credentialing claim based on simple negligence.

Under the rules of statutory construction generally recognized by this court, a statute will not be construed to abrogate a

common law right unless it does so expressly. *See Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 377–78 (Minn.1990). Although the plain language of the second sentence of section 145.63 does limit the liability of hospitals and credentials committees, it in no way indicates intent to immunize hospitals, or to abrogate a common law claim for negligent credentialing. In fact, read in conjunction with the evidentiary and discovery restrictions of section 145.64, the statutory scheme suggests that civil actions for credentialing decisions are indeed contemplated. If the legislature had intended to foreclose the possibility of a cause of action for negligent credentialing, it would not have addressed the standard of care applicable to such an action.

St. Francis argues that the second sentence of section 145.63 creates a standard of care different from the standard of care applicable to a simple negligence claim, effectively elevating the burden of proof necessary to succeed in a claim against a hospital for credentialing decisions. That sentence precludes liability "when the person acts in the reasonable belief that the action or recommendation is warranted by facts known to the person or the review organization after reasonable efforts to ascertain the facts upon which the review organization's action or recommendation is made * * *." In other words, a hospital cannot be liable if it acted reasonably based on information that the hospital actually knew or had reason to know. In our view, that provision is a codification of the common law ordinary negligence standard.[6]

---

**6.** A comparison to the language of the Delaware peer review statute highlights this issue. The Delaware peer review statute provides immunity from suit so long as the person "acted in good faith and without gross or wanton negligence," Del.Code Ann. title 24

§ 1768(a) (2006), clearly elevating the standard of proof to something greater than negligence. In *Svindland*, the federal court held that the Delaware statute makes it "nearly impossible to assert negligent credentialing claims" and dismissed because plaintiffs did

We conclude that the liability provisions of section 145.63 do not materially alter the common law standard of care and that, although the confidentiality provisions of section 145.64 present some obstacles in both proving and defending a claim of negligent credentialing, they do not preclude such a claim.

4. *Do the policy considerations in favor of the tort of negligent credentialing outweigh any tension caused by conflict with the peer review statute?*

The function of peer review is to provide critical analysis of the competence and performance of physicians and other health care providers in order to decrease incidents of malpractice and to improve quality of patient care. Richard L. Griffith & Jordan M. Parker, *With Malice Toward None: The Metamorphosis of Statutory and Common Law Protections for Physicians and Hospitals in Negligent Credentialing Litigation,* 22 Tex. Tech. L.Rev. 157, 159 (1991); Kenneth R. Kohlberg, *The Medical Peer Review Privilege: A Linchpin for Patient Safety Measures,* 86 Mass. L.Rev. 157, 157 (2002). This court has held that the purpose of Minnesota's peer review statute is to promote the strong public interest in improving health care by granting certain protections to medical review organizations, *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 387 (Minn.1999), and to encourage the medical profession to police its own activities with minimal judicial interference, *Campbell v. St. Mary's Hosp.,* 312 Minn. 379, 389, 252 N.W.2d 581, 587 (Minn.1977). This court has also recognized that "the quality of patient care could be compromised if fellow professionals are reluctant to partici-

pate fully in peer review activities." *Amaral,* 598 N.W.2d at 388.

The Larsons argue that policy considerations weigh in favor of the tort because allowing patients to hold hospitals liable for negligent credentialing will lead to more reasonable and responsible credentialing decisions, thereby improving the quality of health care. St. Francis and the amici argue that recognition of a negligent-credentialing claim will harm the quality of health care in Minnesota because, if physicians may be subject to liability for negligent credentialing, they will be reluctant to participate in peer review.

St. Francis also argues that recognition of a negligent-credentialing tort is not necessary because patients who prove that a physician's negligence caused them harm are entitled to full compensation from the physician and his or her employer. *See Schneider v. Buckman,* 433 N.W.2d 98, 101–02 (Minn.1988). The Larsons counter that malpractice claims against problem physicians are not likely to compensate patients because those physicians are the least likely to have adequate malpractice insurance. The Larsons reason that if a hospital grants privileges to a problem physician, public policy goals are well served by holding the hospital liable for injuries not compensated for by the physician's insurance.

St. Francis also argues that the trial of a negligent-credentialing claim will present serious procedural issues in addition to the effects of the limitations of the peer review statute. It argues that physicians who are faced with defending a medical malpractice claim within the same trial as a negligent-credentialing claim will be unfairly prejudiced by the admission of negative information that is relevant to the credentialing process, but is irrelevant to the determina-

not claim malice or bad faith. 2006 WL 3209953, at *3–4. The Minnesota statute

does not elevate the standard of proof in this manner.

tion of the malpractice claim. St. Francis argues that, to avoid this type of prejudice, courts will have to allow bifurcated proceedings, thereby increasing the time and expense of litigation.

■ We recognize that a claim of negligent credentialing raises questions about the necessity of a bifurcated trial and the scope of the confidentiality and immunity provisions of the peer review statute. We likewise recognize that there is an issue about whether a patient must first prove negligence on the part of a physician before a hospital can be liable for negligently credentialing the physician. But, in part, these are questions of trial management that are best left to the trial judge. *See Conwed Corp. v. Union Carbide Chems. and Plastics Co., Inc.*, 634 N.W.2d 401, 413 n. 11 (Minn.2001). Further, they cannot be effectively addressed in the context of this Rule 12 motion.

■ We conclude that the policy considerations underlying the tort of negligent credentialing outweigh the policy considerations reflected in the peer review statute because the latter policy considerations are adequately addressed by the preclusion of access to the confidential peer review materials. We therefore hold that a claim of negligent credentialing does exist in Minnesota, and is not precluded by Minnesota's peer review statute. We reverse the answer of the court of appeals to the first certified question, answer that question in the affirmative, and remand to the district court for further proceedings consistent with this opinion.

■ The Larsons also challenge dicta in the court of appeals opinion, noting that the confidentiality provisions of the peer review statute may present due process issues in the trial of a negligent-credentialing claim. But because we have concluded that the confidentiality provisions of the peer review statute do not preclude the presentation of evidence in defense of a negligent-credentialing claim, we conclude that the confidentiality provision is not facially unconstitutional. We leave for another day the question of whether circumstances might arise that would render the provision unconstitutional as applied.

Reversed and remanded.

PAGE, Justice, took no part in the consideration or decision of this case.

ANDERSON, G. BARRY, Justice (concurring).

I reluctantly concur in the result reached by the majority. Minnesota Statutes § 145.63 (2006) clearly contemplates a cause of action against a review organization for negligent credentialing when the organization fails to make a reasonable effort to inform itself of the facts or fails to act reasonably on those facts. That said, I am skeptical of the efficacy of negligent credentialing litigation as a method of improving health care. I write separately, however, to express my concern that our peer review statute may not be fulfilling the intended purpose and to encourage the legislature to revisit this important issue.

The main administrative body or governing board that is responsible for overseeing the activities of a hospital is often comprised primarily or entirely of nonphysicians. Ronald G. Spaeth et al., *Quality Assurance and Hospital Structure: How the Physician–Hospital Relationship Affects Quality Measures*, 12 Annals Health L. 235, 236 (2003) (citing Paul L. Scibetta, *Restructuring Hospital–Physician Relations: Patient Care Quality Depends on the Health of Hospital Peer Review*, 51 U. Pitt. L.Rev. 1025, 1031–32 (1990)). The board thus must rely on the hospital's staff physicians to evaluate peer performance, and "the level of quality provided to patients depends upon how well the processes of credentialing and peer

review are carried out by their physicians." *Id.* at 237.

Despite the central role of peer review in ensuring quality care, physicians are often reluctant to participate in the peer review process and have little motivation to participate aggressively and meaningfully. Peer review participants receive no compensation for their time. *Id.* at 238. They face the social tension that comes with evaluating and criticizing peers along with the possibility of reprisal in the form of lost patient referrals. *Id.* They may also face legal repercussions from their decisions. *Id.* at 237–38. The threat of lawsuits, and burdensome discovery, stifles the "[f]ree, uninhibited communication of information to and within the peer review committee [that] is imperative to the professed goal of critical analysis of professional conduct." Richard L. Griffith & Jordan M. Parker, *With Malice Toward None: The Metamorphosis of Statutory and Common Law Protections for Physicians and Hospitals in Negligent Credentialing Litigation,* 22 Tex. Tech. L.Rev. 157, 159 (1991). When Congress enacted the Health Care Quality Improvement Act, it found that "[t]he threat of private money damage liability under [state and] Federal laws, including treble damage liability under Federal antitrust law, unreasonably discourages physicians from participating in effective professional peer review." 42 U.S.C. § 11101(4) (2000).

> Review by one's peers within a hospital is not only time-consuming, unpaid work, it is also likely to generate bad feelings and result in unpopularity. If lawsuits by unhappy reviewees can easily follow any decision * * * then the peer review demanded by [the law] will become an empty formality, if undertaken at all.

*Scappatura v. Baptist Hosp.,* 120 Ariz. 204, 584 P.2d 1195, 1201 (1978).

To encourage robust peer review, all states and the federal government have enacted statutes that protect peer review participants through immunity, privilege, confidentiality, or some combination of the three. Susan O. Scheutzow, *State Medical Peer Review: High Cost but No Benefit— Is It Time for a Change?,* 25 Am. J.L. & Med. 7, 9 (1999). These statutes run counter to the general trend in the law, which has been to abrogate privileges and immunities. *Id.* at 17.

It is open for debate, however, whether these measures actually promote effective peer review. A 1999 article in the *American Journal of Law and Medicine* analyzed data available from the National Practitioner Data Bank (NPDB)[7] and concluded that they do not. *See* Scheutzow, *supra,* at 8. The article suggests that peer review protection statutes are insufficient because they do not address "the loss of referrals and general ill-will that may be generated by sanctioning a colleague." *Id.* at 19.

Minnesota law contemplates a cause of action by a patient against a peer review organization (Minn.Stat. § 145.63), but protects the work product of the organization with privilege and confidentiality (Minn.Stat. § 145.64 (2006)). A plaintiff who alleges negligent credentialing must show that the peer review organization failed to act reasonably, but is prohibited

---

7. The NPDB is a computerized national directory of information on malpractice judgments, settlement payments, disciplinary actions, and license suspensions and revocations. Scheutzow, *supra,* at 8 n. 9. It was established by Congress to provide for effective interstate monitoring of incompetent physicians and "serves as an information clearinghouse that peer review boards can check when evaluating a physician's ability to practice quality medicine." *Id.*

by section 145.64 from discovering the basis for the peer review organization's decision—the most obvious source of evidence of the reasonableness of that decision. *See* B. Abbott Goldberg, *The Peer Review Privilege: A Law in Search of a Valid Policy*, 10 Am. J.L. & Med. 151, 162 (1984). "[A]s a matter of public policy it makes little sense to create a cause of action and then, by creating a privilege, destroy the means of establishing it." *Id.* at 159.

Furthermore, there appear to be no reliable studies of how, exactly, privilege and confidentiality statutes affect negligent credentialing lawsuits and whether plaintiffs, peer review participants, or both suffer in the end. The conventional wisdom is that the bar to discovery of peer review documents will burden the plaintiff, because the plaintiff bears the burden of proof. *See, e.g.,* Christina A. Graham, Comment, *Hide and Seek: Discovery in the Context of the State and Federal Peer Review Privileges,* 30 Cumb. L.Rev. 111, 114–15 (2000). This is probably true in most circumstances, but in certain cases the confidentiality requirement may hamper defendants by preventing a hospital from demonstrating that the hospital did not and could not obtain information that called a physician's competence into question.

Whatever the theoretical merits of Minn.Stat. § 145.64's confidentiality and privilege protections, they may ultimately be of little consequence because the statute allows disclosure and discovery of any information—such as incident reports, patient charts, records, billing information, and general medical error and safety information—available from an original source. Minn.Stat. § 145.64, subd. 1 ("Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization * * *."). Thus, it is only documents originally created by the peer review organization that are truly off-limits. "[D]espite current immunity and confidentiality legislation, it is not uncommon for a large portion of the peer review documents to be considered discoverable in a medical malpractice action." Spaeth et al., *supra,* at 243 (citing Jason M. Healy et al., *Confidentiality of Health Care Provider Quality of Care Information,* 40 Brandeis L.J. 595, 597 (2002)). Therefore, "denial of the privileged documents should have little impact on any patient's ability to maintain a cause of action for medical malpractice." *Doe v. Ill. Masonic Med. Ctr.,* 297 Ill. App.3d 240, 231 Ill.Dec. 411, 696 N.E.2d 707, 711 (1998). Of course, limiting the privilege in this manner prevents hospitals faced with a malpractice suit from hiding incriminating information by funneling it through the peer review committee. *See May v. Wood River Twp. Hosp.,* 257 Ill. App.3d 969, 195 Ill.Dec. 862, 629 N.E.2d 170, 174 (1994). But the discoverability of incident reports and similar quality assurance measures "constitutes a significant impediment to the peer review process. Physicians will be reluctant to create such records if parties to lawsuits can subsequently discover them." Kenneth R. Kohlberg, *The Medical Peer Review Privilege: A Linchpin for Patient Safety Measures,* 86 Mass. L.Rev. 157, 160 (2002).

Peer review participants also enjoy qualified immunity under Minn.Stat. § 145.63. Like Minnesota, "[t]he majority of states have qualified the immunity, imposing as statutory hurdles the threshold requirement that the peer review actions be taken without malice, in good faith or reasonably in order to invoke the immunity." *Smith v. Our Lady of the Lake Hosp., Inc.,* 639 So.2d 730, 742 (La.1994).

But the qualified immunity afforded by section 145.63 is likely to be of little comfort to a peer review participant. Under the statute, a negligent-credentialing plaintiff must demonstrate that the peer review organization did not act based on a reasonable belief or make reasonable efforts to ascertain the facts—but failure to exercise reasonable care is always the basis of a negligence action. *See, e.g., Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 674 (Minn.2001) (citing Restatement (Second) of Torts § 323 (1965)). In order to recover, therefore, a negligent credentialing plaintiff would need to prove that the peer review organization's decision was unreasonable even in the absence of Minn.Stat. § 145.63. With or without the statute, a negligent-credentialing case will most likely proceed at least to the summary judgment stage, as the reasonableness of a peer review organization's decision will not generally be disposed of on the pleadings but will require discovery and expert testimony. It is therefore not clear to me what section 145.63 accomplishes, other than preventing negligent-credentialing and privileging from turning into strict liability torts.

An obvious response would be to strengthen the immunity provision and immunize peer review participants from liability to patients unless the peer review organization performed its duties recklessly or with malice. But for those who argue, as the appellant does here, that the prospect of a negligent-credentialing claim forces hospitals to shore up defective credentialing procedures, a stronger immunity provision may discourage adverse peer review decisions. The argument advanced by appellants is essentially that "institutions and individuals held responsible to injured patients for failing to perform effective peer review will be more diligent in policing the profession and taking corrective actions." Scheutzow, *supra*, at 56.

It may be that a partial solution is found in changes to these confidentiality and immunity provisions. Or perhaps part of the solution may lie in revisiting the credentialing machinery. It is also worth noting that negligent-credentialing actions are a very small piece in a much larger puzzle, medical malpractice litigation, and it is possible that the best route to reform runs through the larger issues present in the medical malpractice debate. But whatever suggested improvements might surface, the place to address these issues is in the executive and legislative branches of our government, an exercise I would encourage forthwith.

ANDERSON, PAUL H. (concurring).

I join in the concurrence of Justice Barry Anderson.