STATE OF MINNESOTA

IN SUPREME COURT

A22-1796

Court of Appeals                                                    Chutich, J.
                                                 Took no part, Hennesy, J.

Pedro Alonzo, et al.,

                    Appellants,

vs.                                                           Filed: July 10, 2024
                                                 Office of Appellate Courts

Richard Menholt, et al.,

                    Respondents.

_____

James R. Hoy, Kellen B. Bubach, Maring Williams Law Office, P.C., Fargo, North Dakota, and Detroit Lakes, Minnesota, for appellants.

Michael J. Tomsche, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, Minnesota, for respondents.

Thomas H. Boyd, Kyle R. Kroll, Winthrop & Weinstine, P.A., Minneapolis, Minnesota, for amici curiae Chamber of Commerce of the United States of America and the Minnesota Chamber of Commerce.

Matthew J. Barber, Schwebel, Goetz & Sieben, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Association for Justice.

Harrison E. Berg, Jeffrey M. Markowitz, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

_____

1

The tort of negligent selection of an independent contractor exists under the common law of Minnesota.

Affirmed.

O P I N I O N

CHUTICH, Justice.

Appellants Pedro[1] and Aida Alonzo brought this personal injury action against respondents Richard Menholt, Menholt Farms, Inc., and Menholt Farms, LLC (collectively "Menholt Farms") for negligent selection of an independent contractor. Menholt Farms moved for summary judgment, asserting that Minnesota does not recognize a claim for negligent selection of an independent contractor and that, even if it did, no genuine dispute of material fact exists as to its alleged negligence under that claim. The district court granted the motion for summary judgment. It concluded that Minnesota recognizes the claim, but that there is no genuine dispute of material fact as to whether Menholt Farms failed to exercise reasonable care. In a nonprecedential opinion, the court of appeals affirmed. It held that Minnesota does *not* recognize the claim and that, even if it did, no genuine dispute of material fact exists as to Menholt Farms's alleged negligence.

We granted review on two issues. On the first, we recognize that the tort of negligent selection of an independent contractor exists under the common law of

---

[1]     Unfortunately, Pedro Alonzo died shortly before we heard oral argument in this case. Because the events underlying the claim at issue, the attendant lawsuit, and the majority of the appellate proceedings occurred while he was living, we refer to him in the present tense.

Minnesota. On the remaining issue for which we granted review—whether the district court erred in granting Menholt Farms's motion for summary judgment—we are evenly divided. For this reason, we do not discuss that issue, and we affirm the decision of the court of appeals concluding that summary judgment was properly granted.

## FACTS

In the early morning hours of October 19, 2018, Pedro Alonzo was driving a semi-truck, hauling sugar beets on a rural, two-lane highway near Felton—a town located about 25 miles from Moorhead. Autumn is harvest season for sugar beets, and another driver, Alberto Lopez, was hauling the same that morning, nearing the end of an all-night shift. Shortly after 6 a.m., Lopez crossed the centerline in his single-unit truck and struck Alonzo's semi-truck. Alonzo suffered serious injuries in the crash and was airlifted to a nearby hospital. The law enforcement officers who responded to the scene discovered that Lopez had a suspended license and an active felony arrest warrant. Lopez also had multiple driving-while-impaired (DWI) convictions and recent speeding infractions. An incident report reconstructing the accident stated that Lopez caused the crash by leaving his lane. The boxes on the report for alcohol and controlled substances were not checked; as to speeding, the report stated "unknown."

At the time of the crash, Lopez worked as a truck driver for Braaten Farms, a local farm owned by Darcy Braaten. Braaten Farms, in turn, worked as an independent contractor for Menholt Farms, a larger crop farm owned by Richard Menholt.

Each autumn, Menholt Farms needed extra hands to timely harvest its sugar beets—a crop that spoils if it freezes. For this reason, Menholt Farms hired Braaten Farms

3

as an independent contractor to haul its sugar beets in a truck owned by Braaten Farms. Menholt and Braaten, the farm owners, grew up in the area and had known each other for many years. Given this longstanding relationship, Menholt Farms hired Braaten Farms over many seasons—for all of Menholt and Braatens' adult lives, "more or less"—to help with the sugar beet harvest. But Menholt Farms ran a 24-hour operation at harvest, so Braaten Farms needed to employ an extra driver for the job—that way, Braaten could work one 12-hour shift each day and the driver would cover the other 12 hours. Lopez worked for Braaten Farms as a W-2 employee the year the crash occurred.

Braaten Farms employed Lopez to haul Menholt Farms's sugar beets at harvest, and it had done so for at least a few seasons preceding the crash. In hiring Lopez, Braaten Farms did not solicit a job application, conduct an interview, verify whether Lopez had any truck driving experience, run a background check, conduct a criminal history search, review Lopez's driving record, or search for Lopez on the internet. Sometime before the crash, Braaten saw Lopez's license from a foot away when Lopez displayed it after Braaten inquired whether he had a valid driver's license.

Similarly, Menholt Farms never asked about how Braaten Farms hired or screened the employees who hauled Menholt Farms's sugar beets, like Lopez. Nor did Menholt Farms conduct any search of Lopez on its own. Menholt Farms interacted only with Braaten in coordinating the sugar beet harvest and paying Braaten. But, according to Menholt, if Menholt Farms had known that Lopez had a suspended license, DWI convictions, and recent speeding tickets, it would not have wanted Lopez transporting its sugar beets.

Following the crash, Alonzo and his wife sued Menholt Farms,[2] claiming that they were negligent in selecting Braaten Farms as an independent contractor. Menholt Farms moved for summary judgment, arguing that Minnesota does not recognize a claim for negligent selection of an independent contractor and, even if it did, there was no genuine issue of material fact as to its alleged negligence.

The district court concluded that Minnesota recognizes a claim for negligent selection of an independent contractor. It acknowledged that we have not expressly adopted the tort of negligent selection of an independent contractor but decided to recognize the claim based on existing caselaw, the recognition of the claim in the Restatement (Second) of Torts, and in anticipation of the tort's recognition by the appellate courts. Regarding this issue, the court consulted a case from the United States District Court for the District of Minnesota, *Soto v. Shealey*, 331 F. Supp. 3d 879 (D. Minn. 2018). *Soto* applied the *Erie* doctrine[3] to determine whether our court would recognize a claim for

---

[2] Initially, the Alonzos also (1) pursued a claim under a theory of vicarious liability, alleging that Lopez was an employee or agent of Menholt Farms; and (2) sued Syinthia Menholt, Richard Menholt's wife. Following discovery, however, the Alonzos abandoned their vicarious liability claim and voluntarily dismissed Syinthia from the case.
The Alonzos also separately sued Braaten and Lopez but reached a settlement agreement as to the claims against Lopez.

[3] Under the *Erie* doctrine, "[f]ederal courts sitting in diversity must apply state substantive law and defer to the highest court of the state whose substantive law the federal court is applying." *Soto*, 331 F. Supp. 3d at 885 (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). But if, as in *Soto*, a state's highest court has not addressed a state law question, a federal court applies "what they find to be the state law after giving proper regard to relevant rulings of other courts of the [s]tate." *Id.* (alteration in original) (citation omitted) (internal quotation marks omitted).

5

negligent selection of an independent contractor if faced with the issue and concluded that we would. *Id.* at 885–86. The district court here reached the same conclusion.

The district court then applied section 411 of the Restatement (Second) of Torts' (section 411) articulation of a claim of negligent selection of an independent contractor on summary judgment. Section 411 provides:

> [A principal][4] is subject to liability for physical harm to third persons caused by [their] failure to exercise reasonable care to employ a competent and careful contractor
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
> (b) to perform any duty which the [principal] owes to third persons.

Restatement (Second) of Torts § 411 (1965). The court found that no genuine issue of material fact exists as to Menholt Farms's alleged negligence because Menholt Farms had no obligation to inquire into Braaten Farms's hiring practices or Lopez's qualifications. The court summarized:

> There is no evidence in the record to suggest that Menholt Farms failed to use reasonable care to employ Braaten Farms as an independent contractor. In fact, the evidence is that this relationship existed for several years without issue. Plaintiffs, however, seek to impose liability on Menholt Farms for the claimed negligence of Braaten Farms hiring Mr. Lopez – a person without a

---

[4]    The Restatement refers to a principal as an "employer" in the context of selecting an independent contractor. But the term "employer" suggests an employer-employee relationship, in which an employer may be held liable for the employee's negligence under a theory of vicarious liability, even if the employer has not been negligent themselves. *Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999) ("Under the well-established principle of respondeat superior, an employer is vicariously liable for the torts of an employee committed within the course and scope of employment." (citation omitted) (internal quotation marks omitted)). In the context of a claim for negligent selection of an independent contractor, however, the principal is liable for their own negligence in selecting an incompetent or careless contractor. For this reason, we use the word "principal," rather than "employer," when referring to the one who hires an independent contractor.

6

valid driver's license and prior driving infractions. This is one step too far removed. Menholt Farms hired Braaten Farms to drive truck during beet harvest. The tort of negligent selection of [an] independent contractor does not extend to the independent contractor's alleged negligent hiring of employees. Simply put, the circle of liability must close at the hiring of the independent contractor. If not, and if the liability extends to the independent contractor's hiring of employees then why even contract with an independent contractor and instead just hire your own employees?

The district court granted Menholt Farms's motion for summary judgment and dismissed the Alonzos' claim with prejudice.

The Alonzos appealed, raising two issues: (1) whether Minnesota recognizes a claim for negligent selection of an independent contractor; and (2) whether the district court erred in granting Menholt Farms's motion for summary judgment. In an unpublished opinion, the court of appeals affirmed, albeit on different grounds. *Alonzo v. Menholt*, No. A22-1796, 2023 WL 6206197, at *7 (Minn. App. Sept. 25, 2023). First, the court held that Minnesota does not recognize a claim for negligent selection of an independent contractor, as our court has not explicitly done so. *Id.* at *5.

But given the possibility that we would recognize the claim, the court of appeals considered whether a genuine issue of material fact exists as to Menholt Farms's liability. *Id.* Based on the comments and illustrations to section 411, the court stated that—for work that does not require special skill or training—"if a company hires an independent contractor, the company may be liable for the negligent conduct of an employee of the independent contractor if the company *knew* that the independent contractor's employees were likely to engage in negligent conduct that endangers others." *Id.* at *6. According to the court, a company has a duty to inquire into the contractor's competence or carefulness

7

only if there is reason to believe that the contractor is not competent or careful. *Id.* In that context, the company may be liable if they *should have known* that the contractor's employees were likely to engage in negligent conduct. *Id.* Because the work at issue did not require special skill or training, and Menholt Farms had no reason to believe that Braaten Farms was not competent, the court concluded that Menholt Farms had no duty to inquire, and there was no genuine issue of material fact. *Id.* at *7.

In a special concurrence, one member of the court of appeals panel agreed that only our court has authority to recognize a new common law cause of action. *Id.* at *8 (concurring specially, Gaïtas, J.). The concurrence disagreed, however, with the conclusion that there was no genuine issue of material fact as to Menholt Farms's alleged negligence under section 411. *Id.* Based on our holding in *Larson v. Wasemiller*—which recognized the analogous tort of negligent credentialing in a hospital setting—the concurrence stated that a "jury could find that Braaten Farms was not competent or careful in hiring drivers, and that Menholt Farms *should have known* this fact when it hired Braaten Farms to haul sugar beets." *Id.* (emphasis added). Menholt Farms hired Braaten Farms because of a personal relationship, having no knowledge as to whether Braaten Farms was a careful and competent independent contractor. *Id.* at *9. And, in the concurrence's view, a jury could find that driving a large truck on public roads poses a risk of physical harm unless skillfully and carefully done, which would mean that Menholt Farms was not " 'entitled to assume' " that Braaten Farms was a safe contractor. *Id.* In conclusion, the concurrence stated: "Based on this evidence, and resolving the factual inferences in Alonzo's favor, reasonable persons could draw different conclusions from the evidence as

to whether Menholt Farms breached the duty of reasonable care in selecting Braaten Farms as an independent contractor." *Id.*

We granted the Alonzos' petition for review.

## ANALYSIS

The issue presented is whether Minnesota recognizes a cause of action for negligent selection of an independent contractor. When determining whether to recognize a particular cause of action, we look to the common law and any statutes that expand or restrict the common law. *Larson v. Wasemiller*, 738 N.W.2d 300, 303 (Minn. 2007). We have "the power to recognize and abolish common law doctrines" and "to define common law torts and their defenses." *Id.*; *see Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998); *Schumann v. McGinn*, 240 N.W.2d 525, 537 (Minn. 1976).

> The following factors inform our decision to recognize a common law tort:
>
> (1) whether the tort is inherent in, or the natural extension of, a well-established common law right, (2) whether the tort has been recognized in other common law states, (3) whether recognition of a cause of action will create tension with other applicable laws, and (4) whether such tension is out-weighed by the importance of the additional protections that recognition of the claim would provide to injured persons.

*Larson*, 738 N.W.2d at 304; *see Wal-Mart Stores, Inc.*, 582 N.W.2d at 234–36. We have not explicitly recognized a cause of action for negligent selection of an independent contractor, *see Smith v. Piechowski*, No. A23-0481, 2023 WL 8368483, at *3 (Minn. App. Dec. 4, 2023) (stating that our court has not explicitly adopted the tort of negligent selection of an independent contractor); *Alonzo*, 2023 WL 6206197, at *5 (same), but we have recognized its analogues, *see, e.g.*, *Larson*, 738 N.W.2d at 304–13 (adopting the tort of

9

negligent credentialing).  Applying the *Larson* factors here, we conclude that Minnesota common law recognizes the tort of negligent selection of an independent contractor, and we then briefly explain the contours of that claim.

A.

To determine whether Minnesota common law recognizes the tort of negligent selection of an independent contractor, we apply the four factors set forth in *Larson*.  The first factor that we consider is whether a tort is inherent in, or the natural extension of, a well-established common law right.  *Id.* at 304.  On this issue, our precedent—specifically, our recognition of analogous claims—is instructive.

As the district court observed, section 411 of the Restatement (Second) of Torts recognizes that the tort of negligent selection of an independent contractor exists under certain circumstances:

> [A principal] is subject to liability for physical harm to third persons caused by [their] failure to exercise reasonable care to employ a competent and careful contractor
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
> (b) to perform any duty which the [principal] owes to third persons.

We have "frequently relied on the Restatement of Torts to guide our development of tort law in areas that we have not previously had an opportunity to address."  *Larson*, 738 N.W.2d at 306; *see, e.g.*, *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn. 1983) (adopting the tort of intentional infliction of emotional distress as formulated by the Restatement (Second) of Torts § 46(1) (1965)).

That the Restatement recognizes this cause of action under certain circumstances supports the conclusion that this right is well-established in the common law. And that we have specifically referenced section 411 to support our recognition of *another* new cause of action—negligent credentialing—reinforces this conclusion.

In *Larson*, we analyzed the four factors set forth above to adopt the tort of negligent credentialing. 738 N.W.2d at 304–13. When discussing the first factor—whether negligent credentialing is inherent in, or the natural extension of, a well-established common law right—we stated that, in addition to our precedent recognizing the duty owed by hospitals to protect their patients from third-party harm, "[t]wo other generally recognized common law torts also support recognition of the tort of negligent credentialing." *Id.* at 305. First, negligent credentialing is analogous to the recognized claim of negligent hiring of an employee. *Id.* (citing *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 909–11 (Minn. 1983)). Second, citing to section 411, we stated that "negligent credentialing is perhaps even more directly related to the tort of *negligent selection of an independent contractor*, which has been recognized in the Restatement of Torts to exist under certain circumstances."[5] *Id.* at 306 (emphasis added).

---

[5] The tort of negligent selection of an independent contractor is also recognized in the Restatement (Third) of Torts § 55 (2012). As explained in the reporter's note, "[u]nder § 55, a hirer would be subject to direct liability in contexts covered by § 411." *Id.* Because the tort operates similarly under both the Second and Third Restatements, we frame our analysis here under section 411, which is consistent with our discussion in *Larson*, as well as with how the issue has been addressed by the parties, the district court, and the court of appeals in this case.

And we have also recognized analogous claims, including a claim for negligent hiring in the employment context. *See Ponticas*, 331 N.W.2d at 910–11. Other courts have noted the link between these causes of action. *See Basic Energy Servs., L.P. v. Petroleum Res. Mgmt., Corp.*, 343 P.3d 783, 790 (Wyo. 2015) (stating that Wyoming precedent recognizing the tort of negligent hiring in other contexts "is logically extended to hiring independent contractors"); *Soto*, 331 F. Supp. 3d at 885 ("Negligent selection is the independent-contractor analogue to the tort of negligent hiring in an employee-employer relationship, the latter of which exists under Minnesota law."). Because a cause of action for negligent selection of an independent contractor is recognized by the Restatement, has been cited by our court as a basis to adopt a new common law tort, and is analogous to other recognized torts, we conclude that it is inherent in, or the natural extension of, a well-established common law right.

The second factor is whether the claim at issue has been recognized in other common law states. *Larson*, 738 N.W.2d at 304. In its briefing to our court, Menholt Farms did not dispute that the tort of negligent selection of an independent contractor is recognized by a majority of states. *See Basic Energy Servs.*, 343 P.3d at 790 (counting cases and stating that a "survey of other jurisdictions . . . reveals that the theory of negligent hiring in the context of independent contractors has gained broad acceptance"); *Ruh v. Metal Recycling Servs., LLC*, 889 S.E.2d 577, 581 n.5 (S.C. 2023) (stating that the parties agree that a majority of states recognizes the claim, but dispute whether that number is 34 or 37 states). And our own research confirms that a majority of states recognizes the claim.

The third factor is whether recognizing the cause of action will create tension with other applicable law. *Larson*, 738 N.W.2d at 304. Menholt Farms, amicus Minnesota Defense Lawyers Association, and amici Chamber of Commerce of the United States of America and the Minnesota Chamber of Commerce (collectively "Chamber of Commerce") argue that recognizing the claim will create tension with the general rule that principals are not liable for the actions of their independent contractors. *See Lamb v. S. Unit Jehovah's Witnesses*, 45 N.W.2d 403, 406 (Minn. 1950) ("As a general rule, an employer is not liable for the acts of an independent contractor or his servants.").

Initially, we observe that *if* recognizing this claim did conflict with the general rule of non-liability for those that hire independent contractors, it would merely join a long list of existing exceptions. Almost 90 years ago, in *Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co.*, we addressed "whether a contractor is liable to his contractee for damage to the realty of the latter caused by the negligence of an independent subcontractor while performing a part of the contractual duties of the contractor." 277 N.W.2d 226, 228 (Minn. 1937). Stating that the general rule of non-liability "is now primarily important as a preamble to the catalog of its exceptions," and citing sections 410–29 of the Restatement (First) of Torts (which includes the section at issue here: section 411), we held that the defendant was liable for the negligence of his independent contractor, as the defendant was under an absolute duty to perform the contract at issue. *Id.*

We conclude that recognizing another exception to the general rule—the stated concern of Menholt Farms and the amici—would not create tension with the general rule, particularly when, as here, many long-standing exceptions already exist.

13

But a claim for negligent selection of an independent contractor is *not* an exception to the general rule of non-liability for those that hire independent contractors. Instead, the claim holds a principal liable for its *own* negligence in selecting an independent contractor, meaning that the claim aligns with "the fundamental concept of tort law that liability follows tortious conduct." *Nieting v. Blondell*, 235 N.W.2d 597, 601 (Minn. 1975); *see Ruh*, 889 S.E.2d at 580 (stating that a claim for negligent selection of an independent contractor does "nothing" to "affect[] the general rule that a principal is not liable for the negligence of its independent contractor").

Admittedly, in most cases that involve this claim, the claimant will also allege that the contractor committed some wrongful conduct, whether intentionally or negligently. But under those circumstances, the claimant's theory is (1) that the contractor's wrongdoing was one cause of their injury, and (2) that the principal's negligent selection of that contractor was another. *Ruh*, 889 S.E.2d at 580; *see Staub v. Myrtle Lake Resort, LLC*, 964 N.W.2d 613, 621 (Minn. 2021) (stating that there can be more than one proximate cause of an injury). On the claim at issue, the claimant prevails only if they can prove the *principal's* negligence, rather than by holding the principal liable based only on the contractor's concurrent wrongdoing.

Because the claim at issue is a natural extension of well-established tort principles, we discern no potential conflict between it and applicable law. For this reason, we need not address the fourth, and final, factor set out above—"whether *such* tension is outweighed by the importance of the additional protections that recognition of the claim would provide to injured persons." *Larson*, 738 N.W.2d at 304 (emphasis added). There is no

14

"tension" to balance against the importance of the protections for injured parties that recognizing the tort will provide.

Based on our application of these factors, we conclude that Minnesota common law recognizes a claim for negligent selection of an independent contractor.

B.

Nevertheless, Menholt Farms expresses concern that "[c]reating a duty to vet and investigate independent contractors (and their employees) would immediately result in undue burden, additional costs, and delay for entities utilizing independent contractors." The Minnesota Defense Lawyers Association, similarly, states that imposing on hirers "an amorphous duty to vet contractors hired to do work that they themselves are unsuited to carry out competently or carefully in the mine-run of cases would spark and be kindling for unfair litigation burdens and settlement pressures." And the Chamber of Commerce claims that "the adoption of Section 411 would erode the significant benefits of independent-contractor relationships and instead increase businesses' risk and costs."

We take these arguments seriously and seek to ease the concerns of Menholt Farms, the amici, and those potentially affected by our recognition of the tort by briefly discussing the contours of a claim for negligent selection of an independent contractor.

When defining their respective frameworks for the claim at issue, other state supreme courts have looked to the Restatement rule, and its attendant comments and illustrations, as a proverbial "lodestar." We often look to the Restatement to guide our

15

development of tort law.  *See, e.g.*, *Larson*, 738 N.W.2d at 306.  Again, the Restatement

defines the tort as follows:

> [A principal] is subject to liability for physical harm to third persons caused by [their] failure to exercise reasonable care to employ a competent and careful contractor
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
> (b) to perform any duty which the [principal] owes to third persons.

Restatement (Second) of Torts § 411.  The Alonzos ask us to adopt the claim as set out in

section 411.  The text, comments, and illustrations of the Restatement framework are

instructive in defining the tort's scope and application, and how Minnesota district courts

and juries will consider such claims.  Through this lens, we briefly set out the contours of

a claim for negligent selection of an independent contractor.

Initially, the claim largely parallels the elements of a traditional negligence

claim:  "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and

(4) the breach of that duty being the proximate cause of the injury."  *Fenrich v. The Blake*

*Sch.*, 920 N.W.2d 195, 201 (Minn. 2018) (citation omitted) (internal quotation marks

omitted).

Mirroring these elements, comment b to section 411 defines the "[e]xtent" of the

rule:

> The [principal] of a negligently selected contractor is subject to liability under the rule stated in this Section for physical harm caused by [their] failure to exercise reasonable care to select a competent and careful contractor, but only for such physical harm as is so caused.

Restatement (Second) of Torts § 411 cmt. b.  In other words, to prevail, a claimant must

establish that the principal (1) breached their duty to exercise reasonable care in selecting

a competent and careful contractor, and (2) that this breach of duty caused the claimant's physical harm.

1.

First, section 411 imposes a duty on a principal to "exercise reasonable care to select a competent and careful contractor," recognizing "a duty of care"—the first element of a traditional negligence claim.

But the extent of that duty—in other words, what amounts to "reasonable care"—turns on the circumstances of each individual case. Comment c to section 411 establishes that the degree of care required is fact-dependent and that "[c]ertain factors are important" in its estimation. *Id.* at cmt. c. These factors include (1) "the danger to which others will be exposed if the contractor's work is not properly done," and (2) "the character of the work to be done—whether the work lies within the competence of the average [person]" or requires special skill and training. *Id.*

Regarding the first factor, the Restatement provides that "the amount of care" required "is proportionate to the danger involved in failing to use it." *Id.* More dangerous work requires greater care than work that, if improperly done, would result in "a comparatively trivial injury." *Id.*

Regarding the second factor, the Restatement discusses work that lies "within the competence of the average [person]" as compared to work requiring specialized skill or training. *Id.* For such work that requires no special skill or training, and that poses a minimal risk of physical danger if improperly done, a principal "is entitled to assume that a [contractor] of good reputation is competent . . . ." *Id.* The principal need not inquire

17

into that contractor's actual competence, nor verify the accuracy of their purported reputation, unless the principal actually knows that the contractor is incompetent or has a bad reputation. *Id.*

In contrast, when hiring a contractor to do work that is not "within the competence of the average [person]," a principal has a heightened duty to ensure that the contractor is competent. *Id.* Per the Restatement, if the work at issue is "highly dangerous unless properly done and . . . requires peculiar competence and skill for its successful accomplishment, one who [hires] a contractor to do such work may well be required to go to considerable pains to investigate the reputation of the contractor . . . ." *Id.*

Based on the above-described factors, to prevail on a claim of negligent selection of an independent contractor, the claimant must prove that the principal did not exercise reasonable care. And the degree of care required will vary depending on the circumstances, but is lower when the work at issue requires little skill and imposes little risk. In contrast, a higher duty is imposed when the work requires special training or skill to perform properly and imposes a high risk of danger if done improperly.

Consequently, as a practical matter, a heightened duty to inquire into a contractor's reputation or actual competence, when it exists, may more often fall on persons or entities in a professional setting who have a greater capacity to understand the work at issue and its attendant risks, and to ensure that their contractors are competent and careful. And many persons or entities that habitually rely on independent contractors already have procedures in place to ensure that they do not hire those who are incompetent or careless. *Ruh*, 889 S.E.2d at 582 ("[M]ost participants in the modern economy already act

18

reasonably in selecting contractors."); *Sievers v. McClure*, 746 P.2d 885, 891 (Alaska 1987) (stating that the cause of action "is not unduly burdensome, as in most cases it requires no additional effort from an employer who must act reasonably in the selection process in any event in order to protect third parties from harm"). For this reason, our recognition of the cause of action at issue will impose few additional burdens, if any, on the parties held to a heightened standard of care under section 411.

2.

Finally, like a traditional negligence claim, a cause of action for negligent selection of an independent contractor requires the plaintiff to prove that the principal's negligence was a proximate cause of their injuries. On this point, the Restatement requires that the harm at issue "result from some quality in the contractor which made it negligent for the employer to entrust the work to [them]." Restatement (Second) of Torts § 411 cmt. b. In this way, if the contractor is incompetent given a "lack of skill and experience or of adequate equipment but not in any previous lack of attention or diligence," then the principal will only be liable for harm caused by that "lack of skill, experience, or equipment, but not for" harm caused "by the contractor's inattention or negligence." *Id.*

This causation requirement will limit the claim's availability to circumstances when the principal could have reasonably anticipated the harm, which must stem from a quality in the independent contractor that made it negligent for the principal to entrust the work to them. In other words, had the principal exercised reasonable care, the principal would have known of that quality and not hired the contractor, and the harm would not have occurred.

\*　　\*　　\*

19

As to the remaining issue for which we granted review—whether the district court erred in granting Menholt Farms's motion for summary judgment—we are evenly divided. Therefore, the decision of the court of appeals on this issue stands. *Hous. & Redevelopment Auth. ex rel. City of Richfield v. Walser Auto Sales, Inc.*, 641 N.W.2d 885, 891 (Minn. 2002) (declining to address an issue on which the court was evenly divided and affirming the court of appeals); *accord Wilson v. Gadient*, 29 N.W. 887, 888 (Minn. 1886) (stating that an equally divided court "necessarily results in an affirmance of the decision of the court below upon this point, and for the purpose of this case"). This precedent also necessarily leads to an affirmance of the court of appeals' overall disposition affirming the district court's grant of summary judgment.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.


HENNESY, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.