STATE OF MINNESOTA

IN SUPREME COURT

A24-0699

Court of Appeals            Moore, III, J.
Took no part, Hennesy J.

Rebecca A. Niebuhr,

         Respondent,

vs.          Filed: May 6, 2026
Office of Appellate Courts

Jacob Sieberg,

         Defendant,

Timothy Sieberg, et al.,

         Appellants.

_____

Scott Wilson, Scott Wilson Law Firm, PLLC, Minneapolis, Minnesota;

Mark Bradford, Bradford Andresen Norrie & Camarotto, Bloomington, Minnesota; and

Renee C. Rubish, George Chronic, Maschka, Riedy, Ries & Frentz, Mankato, Minnesota, for respondent.

Kay N. Hunt, John R. Crawford, Michelle K. Kuhl, Lommen Abdo, P.A., Minneapolis, Minnesota, for appellants.

Matthew J. Barber, Schwebel, Goetz & Sieben, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Association for Justice.

Nicole R. Weinand, Aafedt, Forde, Gray, Monson & Hager, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

_____

1

1.      The Safety Responsibility Act, Minn. Stat. § 169.09, subd. 5a, imposes vicarious liability on a motor vehicle owner for the tortious conduct of a permissive driver even when the driver is personally immune from liability for that conduct.

2.      The coemployee immunity provision of the Workers' Compensation Act, Minn. Stat. § 176.061, subd. 5(e), provides a personal immunity to a coemployee, rather than a release of liability, and therefore does not protect motor vehicle owners who would otherwise be vicariously liable for the coemployee's conduct as the driver under the Safety Responsibility Act.

Affirmed.

O P I N I O N

MOORE, III, Justice.

A business owner died in a car crash caused by his 17-year-old employee losing control of a motor vehicle while driving. The business owner's next of kin sued the employee and the employee's parents, who owned the vehicle, alleging that the employee's negligence caused the business owner's death. On appeal to our court, the parties agree—and we therefore assume without deciding—that the employee was subject to the coemployee immunity provision of the Workers' Compensation Act, which provides that a coemployee is not liable for negligent injury. Minn. Stat. § 176. 061, subd. 5(e). The issue before us is whether, notwithstanding the employee's immunity from liability, the employee's parents may be held vicariously liable for the employee's

negligence under the Safety Responsibility Act, which deems a permissive driver to be the owner's agent in the event of an accident.[1] *Id.* § 169.09, subd. 5a.

To resolve this question, we begin by interpreting the Safety Responsibility Act to analyze the nature of the principal-agent relationship it establishes. We ultimately determine—consistent with our prior decisions—that a principal is vicariously liable for its agent's wrongful conduct even if the agent is personally immune from liability for that conduct. Second, we turn to what we have previously called the coemployee immunity provision of the Workers' Compensation Act and conclude that its plain language grants an employee immunity—rather than a release—from liability for negligent conduct occurring within the scope of employment that injures a coemployee. Accordingly, we ultimately conclude that a motor vehicle owner may be held vicariously liable under the Safety Responsibility Act for a permissive driver's wrongful conduct even when the driver is personally immune from liability under the Workers' Compensation Act. We therefore affirm the court of appeals.

## FACTS

Jason Niebuhr owned Wells Computer and Electronics, LLC ("Wells Computer"), a business located in the City of Wells that repaired, installed, and sold electronics

---

[1] The Safety Responsibility Act creates an agency relationship between the owner of a motor vehicle and any other person who drives the vehicle with the owner's consent. *See* Minn. Stat. § 169.09, subd. 5a. We refer to a person who drives a motor vehicle with the owner's consent as a permissive driver. *See Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 585 (Minn. 2003) (describing the relationship between a vehicle owner and driver, in the context of the Safety Responsibility Act, as "permissive").

including computers and televisions. Jason,[2] who was blind, performed much of this work himself but hired part-time employees for assistance. Jason purchased workers' compensation insurance coverage for his employees but elected not to purchase coverage for himself as the business owner.[3] One of Jason's employees was Jacob Sieberg, who was 17 years old when he worked for Wells Computer during the summer of 2019. Jacob's job duties included driving Jason to customers' homes, often in the Wells Computer company truck.

On August 16, 2019, during the workday, Jacob drove Jason in the company truck to a customer's house while towing a manlift. They set up the manlift, keeping it attached to the company truck for safety purposes. Jacob then walked a couple of blocks to the personal vehicle that his parents, Timothy and Michele Sieberg ("the Siebergs"), owned and permitted him to drive to and from work. Jacob then picked up Jason in the personal vehicle, and they left for lunch and a delivery at another customer's house. After lunch, while driving on the highway to make the delivery, Jacob lost control of the vehicle, causing it to spin into the ditch and roll four times. Jacob survived the crash. Jason died at the scene.

Jason's mother, Rebecca Niebuhr ("Niebuhr"), as trustee for Jason's next of kin, brought a wrongful death action based in negligence against Jacob and the Siebergs.

---

[2]    Because of the shared last names in this case, we refer to Jason Niebuhr and Jacob Sieberg, who are not parties to this appeal, by their first names. We refer to appellants Michele and Timothy Sieberg and respondent Rebecca Niebuhr by their last names.

[3]    Minnesota Statutes section 176.041, subd. 1a(a), provides that business owners may elect coverage for themselves under the Workers' Compensation Act.

Jacob and the Siebergs moved for summary judgment, arguing that Jacob's immunity from liability as a coemployee barred the claims against him and his parents. The district court assessed the interplay between the coemployee immunity provision of the Workers' Compensation Act, Minn. Stat. § 176.061, subd. 5(e), which provides that a coemployee may only be liable for injuring another in some cases, and the Safety Responsibility Act, Minn. Stat. § 169.09, subd. 5a, which deems a permissive driver the agent of the motor vehicle's owner in the event of an accident. The district court granted summary judgment to Jacob because it determined that he was entitled to coemployee immunity under the Workers' Compensation Act. The district court also granted summary judgment to the Siebergs, reasoning that they could not be vicariously liable under the Safety Responsibility Act because Jacob was immune from liability.

Niebuhr did not appeal the district court's determination that Jacob was entitled to summary judgment under the coemployee immunity provision of the Workers' Compensation Act. Niebuhr appealed only the issue of whether the Siebergs could be liable under the Safety Responsibility Act despite Jacob's immunity from liability.[4] The court of appeals reversed, holding that under the Safety Responsibility Act, motor vehicle owners may be liable even when their permissive driver is immune from liability under the coemployee immunity provision of the Workers' Compensation Act.

We granted the Siebergs' petition for further review.

---

[4]    Whether Jacob negligently caused Jason's death is not at issue here. We focus only on whether the Siebergs could be held vicariously liable if Jacob was negligent.

## ANALYSIS

The Siebergs seek review of the court of appeals' reversal of the district court's grant of summary judgment in their favor. We review an appeal from the district court's grant of summary judgment de novo. *Schneider v. Children's Health Care*, 996 N.W.2d 197, 201 (Minn. 2023). We must determine "whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Schneider*, 996 N.W.2d at 201.

The parties do not argue that any genuine issue of material fact exists. The sole issue before us is whether the Siebergs are entitled to judgment as a matter of law. This determination requires us to decide whether motor vehicle owners who would otherwise be vicariously liable for a permissive driver's conduct under the Safety Responsibility Act, Minn. Stat. § 169.09, subd. 5a, may still be held liable if the driver is entitled to coemployee immunity under the Workers' Compensation Act, Minn. Stat. § 176.061, subd. 5(e).

## I.

Resolving this issue requires us to interpret both of these statutes—a question of law we review de novo. *Riverview Muir Doran, LLC*, 790 N.W.2d at 170. "The goal of statutory interpretation is to effectuate the intent of the Legislature." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014). Only if the language is ambiguous will we

consider canons of construction—such as "the mischief to be remedied," "the object to be attained," and "the consequences of a particular interpretation." Minn. Stat. § 645.16; *State v. Riggs*, 865 N.W.2d 679, 682 n.3, 683 n.4 (Minn. 2015). We address the Safety Responsibility Act in Part I and the coemployee immunity provision of the Workers' Compensation Act in Part II below.

A.

The Safety Responsibility Act creates an agency relationship between a motor vehicle owner who consents to another person driving the vehicle and the driver, who is treated as the owner's agent if the motor vehicle is involved in an accident. The Safety Responsibility Act provides that "[w]henever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof." Minn. Stat. § 169.09, subd. 5a.

The Legislature enacted the Safety Responsibility Act in 1933 "to provide for the establishment of financial responsibility by owners of motor vehicles for injury … and damages to property resulting from the maintenance, use and operation of such motor vehicles." Act of Apr. 21, 1933, ch. 351, § 4, 1933 Minn. Laws 574, 574 (codified as amended at Minn. Stat. § 169.09, subd. 5a). The Safety Responsibility Act serves a remedial purpose, that is, to give "persons injured by the negligent operation of automobiles 'an approximate certainty' of an effective recovery by making the owner who lent his vehicle to another responsible as well as the possible or probable

irresponsible operator." *Milbank Mut. Ins. Co. v. U.S. Fid. & Guar. Co.*, 332 N.W.2d 160, 165 (Minn. 1983) (quoting *Hutchings v. Bourdages*, 189 N.W.2d 706, 709 (Minn. 1971)).

We have said that "there is nothing ambiguous about the [Safety Responsibility Act]" and have consistently interpreted the statute "as creating vicarious liability as to vehicle owners when none existed at common law." *Meyer v. Nwokedi*, 777 N.W.2d 218, 227–28 (Minn. 2010). "Vicarious liability … is the imposition of liability on one person for the actionable conduct of another person, based solely on the legal relationship between the two persons." *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 614 (Minn. 2012). The vicarious liability created by the Safety Responsibility Act arises from the principal-agent relationship it establishes between a vehicle's owner and a permissive driver.

## B.

By imposing liability via an agency relationship, the Safety Responsibility Act incorporates—and its interpretation depends on—common law principles of agency. The parties agree that principles of agency law apply to our interpretation of the Safety Responsibility Act. But they dispute whether vicarious liability arises because of the agent's *wrongful conduct* or the agent's *liability for that conduct*. The Siebergs argue that a principal may be held vicariously liable only if the agent is liable.[5] The Siebergs argue

---

[5] The Siebergs also argue that they cannot be liable for Jacob's conduct because they were, at most, co-principals with Jason and Wells Computer. The Siebergs did not make this argument before the district court, and it is thus forfeited. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Although we can consider forfeited arguments under certain circumstances, we decline to do so here. *See Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 688 (Minn. 1997).

that this interpretation is supported by the language of the Safety Responsibility Act, which does not explicitly impose liability on a motor vehicle owner but establishes a principal-agent relationship between the owner and a permissive driver, implying that the owner may not be liable in certain circumstances. Niebuhr counters that for purposes of the Safety Responsibility Act, a principal may be held vicariously liable for the agent's wrongful conduct regardless of whether the agent is liable. This question is answered by our precedent on agency law.

As a matter of agency law, "[a] principal may be legally responsible for the actionable conduct of its agent committed in the course and within the scope of the agency." *Remodeling Dimensions, Inc.*, 819 N.W.2d at 614. Actionable conduct is what could give rise to liability; it is not the liability itself. *See, e.g.*, *Bedow v. Watkins*, 552 N.W.2d 543, 547 (Minn. 1996) (describing as "long-standing" the "common-law notion that a principal is liable for the *act* of an agent committed in the course and within the scope of agency" (emphasis added)).

We applied this principle in *Miller v. J. A. Tyrholm & Co.*, where we considered whether a motor vehicle owner may be liable under the Safety Responsibility Act for a permissive driver's wrongful conduct when the driver was immune from liability. 265 N.W. 324 (Minn. 1936). In *Miller*, a husband and wife visited a car dealer to test drive a motor vehicle. *Id.* at 325. The husband crashed the car during the road test, injuring the wife, and the wife sued the dealer arguing that it was liable for her injuries

9

under an early version[6] of the Safety Responsibility Act. *Id.* At that time, the common-law rule of spousal immunity prevented the wife from suing her husband for his tortious conduct.[7] *Id.* at 325, 328. Despite the husband's immunity from liability, we concluded that the car dealer could be held vicariously liable for the husband's conduct. *Id.* at 328.

In so holding, we explained that a principal's vicarious liability arises from an agent's negligent conduct—not the agent's liability for that conduct. *See id.* ("The husband's negligence being conceded, and his agency for defendant established, nothing further remains to fasten liability upon defendant."). We rejected the argument, which the Siebergs make here, "that unless the agent or servant is liable, no liability can attach to the principal or master." *Id.* at 328. We stated that "if a negligent act resolves itself into injury to another, and if the actor occupies a position which makes him immune to suit for recovery of damages, that alone should not relieve the principal or master."[8] *Id.* at 325–26. In making this determination, we found support in section 217 of the Restatement (First) of Agency, which states:

> A master or other principal is not liable for acts of a servant or other agent which the agent is privileged to do although the principal himself would not

---

[6]  The language in Minn. Stat. § 169.09, subd. 5a, has remained largely unchanged since its original enactment. *See* Act of Apr. 21, 1933, ch. 351, § 4, 1933 Minn. Laws 574, 577 (codified as amended at Minn. Stat. § 169.09, subd. 5a).

[7]  In 1969, we abrogated spousal immunity in Minnesota. *Beaudette v. Frana*, 173 N.W.2d 416, 420 (Minn. 1969).

[8]  We have elsewhere said that "a principal can be vicariously liable to a third party for the conduct of its agent only if the agent would be liable to the third party for that act," *Remodeling Dimensions, Inc.*, 819 N.W.2d at 615, but this does not mean a principal is vicariously liable only if the agent is liable, too. Rather, it means that the agent's conduct is the type that would give rise to liability.

be so privileged; but he may be liable for an act as to which the agent has a personal immunity from suit.

Restatement (First) of Agency § 217(2) (A.L.I. 1933); *Miller*, 265 N.W. at 327–28.

Applying *Miller*, the court of appeals here held that vehicle owners could be vicariously liable under the Safety Responsibility Act even if a permissive driver is immune from liability. *Niebuhr v. Sieberg*, 16 N.W.3d 117, 123 (Minn. App. 2025). We agree. Our holding in *Miller* remains good law, as do the agency principles it articulated. In the ninety years since its issuance, we have never overturned or narrowed *Miller*'s holding regarding the Safety Responsibility Act or the agency law upon which it relies. Quite the opposite. We have extended the agency principles articulated in *Miller* to contexts beyond spousal immunity. *See Poynter v. County of Otter Tail*, 25 N.W.2d 708, 711–12 (Minn. 1947) (relying on *Miller* and section 217 of the Restatement (First) of Agency to reject the argument that a county (as principal) was immune from suit because the State of Minnesota (as agent) was immune).[9]

Moreover, the outcome in *Miller* comports with principles that have carried over into several other Restatements promulgated since the Restatement (First) of Agency on which *Miller* relied. *See* Restatement (Second) of Agency § 217(b)(ii) (A.L.I. 1958) ("In an action against a principal based on the conduct of a servant in the course of

---

[9] The Siebergs argue that *Poynter* is distinguishable because there the principal was itself negligent, while they had no part in Jacob's alleged negligent conduct. Yet to reject the argument that an agent's immunity shields a principal from immunity, *Poynter* did not rely on the principal's own potential negligence. *Poynter*'s relevance here is that its application of the rule from *Miller*—that an agent's personal immunity from liability does not extend to a principal—is not limited to the context of spousal immunity.

employment … [t]he principal has no defense because of the fact that … the agent had an immunity from civil liability as to the act.");[10] Restatement (Second) of Torts § 880 (A.L.I. 1979) ("If two persons would otherwise be liable for a harm, one of them is not relieved from liability by the fact that the other has an absolute privilege to act or an immunity from liability to the person harmed.");[11] Restatement (Second) of Judgments § 51(1)(b) (A.L.I. 1982) ("If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other[,] … [a] judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct

---

[10] The concept that an agent's immunity from liability does not impute onto a principal, which appears in section 217 of both the Restatement (First) of Agency and the Restatement (Second) of Agency, did not expressly carry over into the most recent Restatement (Third) of Agency. At the same time, however, the reporter's notes on Restatement (Third) of Agency § 7.01 (A.L.I. 2006), continue to acknowledge that "[a]n agent's immunity to civil liability does not shield the principal from liability based on respondeat superior for an act by an agent committed in the course of employment."

[11] The title of Restatement (Second) of Torts § 880 is "One of Two Tortfeasors Has an Immunity." Although this title may imply the rule applies only when two individuals engaged in tortious conduct, the comment to the rule confirms that it "applies to situations in which one who, because of a relation to another or because of a general immunity from tort liability, is not civilly responsible for an act that except for the immunity would have created liability, and in which there is another whose conduct is also a legal cause of the harm." *Id.* § 880 cmt. a. It adds that "when a servant while acting in the scope of his employment negligently harms another, the fact that he is in such relation to the injured person that suit can not be brought against him does not relieve the master from liability." *Id.* Therefore, the principle in Restatement (Second) of Torts § 880 is instructive here.

unless … [t]he judgment in the first action was based on a defense that was personal to the defendant ….").[12]

The Siebergs argue that we should not adopt these sections of the Restatements and that they do not apply here. We do not rely on the newer Restatement provisions to reach our holding. Although we have often relied on the Restatements to " 'guide our development of … law in areas that we have not previously had an opportunity to address,' " *Alonzo v. Menholt*, 9 N.W.3d 148, 154 (Minn. 2024) (quoting *Larson v. Wasemiller*, 738 N.W.2d 300, 306 (Minn. 2007)), we have had the opportunity, in *Miller*, to address the contours of the principal-agent relationship under the Safety Responsibility Act. At the same time, Restatements of the law can demonstrate that a rule is "well-established in the common law." *Id.* at 155. Here, the Restatements align with both the outcome in *Miller* and the principles of agency law on which it rests, reinforcing that our decision in *Miller* was correct.

The Siebergs also argue that *Miller* does not apply because it involved the discredited and abandoned doctrine of common law spousal immunity rather than the

---

[12] The comment to Restatement (Second) of Judgments § 51 (A.L.I. 1982) explains that the scope of the rule extends to relationships where one person is vicariously liable "for the conduct of another," including relationships between the "owner and driver of a motor vehicle when applicable law makes the owner responsible for injuries resulting from the driver's use of the vehicle with the owner's permission" and relationships between "principal and agent for matters within the scope of the agency relationship." *Id.* § 51 cmt. a. The comment then explains that the rule applies whenever "the person vicariously responsible may be held liable even though an action cannot be maintained against the primary obligor. This is the case when the primary obligor is immune from suit by the injured person (for example, because of the operation of a worker's compensation law) …." *Id.*

statutory coemployee immunity at issue here. And they highlight the distinction that the wife in *Miller* had no other source of recovery if neither her husband nor the car dealer could be held liable, while here, Niebuhr could seek recovery from Wells Computer. Yet our decision in *Miller* did not hinge on the type of immunity at issue. We did not reach our holding by narrowing the scope of an immunity; rather, we applied immunity within the framework of agency principles. *See Koenigs v. Travis*, 75 N.W.2d 478, 485 (Minn. 1956) (stating that *Miller* did not "affect the common[]law marital immunity as it has been applied in this state" but rather "involve[d] the question of agency"). Nor did our decision in *Miller* rely on the existence of alternative sources of recovery. The origin of the immunity—whether statutory or common law—and the availability of alternative remedies do not affect the agency principles underlying our conclusion that the Safety Responsibility Act imposes vicarious liability on a motor vehicle owner for a permissive driver's conduct, even if the driver is immune from liability for that conduct.

## II.

We next analyze whether what we have previously called the coemployee immunity provision under the Workers' Compensation Act operates as a personal immunity from liability or a release from liability. If it operates as an immunity, then under our holding above regarding the Safety Responsibility Act, an agent's coverage by the provision would not cut off a principal's vicarious liability.

## A.

The Legislature enacted the Workers' Compensation Act in 1913. Minn. Gen. Stat. ch. 84A (1913); *Lambertson v. Cincinnati Welding Corp.*, 257 N.W.2d 679, 684 (Minn.

14

1977). The purpose of the Workers' Compensation Act is to "assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers." Minn. Stat. § 176.001. The system establishes a "compromise between employees and employers" for workplace injuries. *Stringer v. Minnesota Vikings Football Club, LLC*, 705 N.W.2d 746, 754 (Minn. 2005). Employers are "liable to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence." Minn. Stat. § 176.021, subd. 1. In turn, employees' rights to sue for damages beyond medical benefits and wage loss are limited. *Id.* § 176.001.

In 1979, the Legislature amended the Workers' Compensation Act to also limit an employee's ability to hold a coemployee liable for injury. Act of June 7, 1979, ch. 3, § 31, 1979 Minn. Laws 1256, 1272 (codified at Minn. Stat. § 176.061, subd. 5(e)). We have previously referred to this provision as the "coemployee immunity" provision. *U.S. Specialty Ins. Co. v. James Courtney L. Off., P.A.*, 662 N.W.2d 907, 911 n.3 (Minn. 2003); *Stringer*, 705 N.W.2d at 755. That provision provides that "[a] coemployee working for the same employer is not liable for a personal injury incurred by another employee unless the injury resulted from the gross negligence of the coemployee or was intentionally inflicted by the coemployee." Minn. Stat. § 176.061, subd. 5(e). We have recognized that the Legislature's purpose in enacting this provision was to limit a coemployee's liability in situations of simple negligence out of a concern that allowing an employee to sue a coemployee for negligence "tends to shift tort liability from employer to fellow employee

15

in a manner never intended by the workers' compensation system." *Stringer*, 705 N.W.2d at 755 (citation omitted) (internal quotation marks omitted).

B.

The district court determined—and the parties do not challenge on appeal—that Jacob is entitled to coemployee immunity under the coemployee immunity provision.[13] This appeal is instead focused upon the court of appeals' holding that Jacob's coemployee immunity does not protect the Siebergs from vicarious liability under the Safety Responsibility Act. *Niebuhr*, 16 N.W.3d at 123. The Siebergs argue that holding them vicariously liable under the Safety Responsibility Act would violate the plain terms of the coemployee immunity provision. They claim that because Jacob cannot be liable for negligently causing Jacob's death, the Siebergs cannot be vicariously liable for his conduct. Niebuhr counters that holding the Siebergs vicariously liable would not violate

---

[13] We note that it is unclear whether the coemployee immunity provision applies here. For purposes of the Workers' Compensation Act, "[a]ny person for whom coverage is elected … shall be included within the meaning of the term employee for the purposes of [Minnesota Statutes chapter 176]." Minn. Stat. § 176.041, subd. 1a(g). Jason had the option to elect coverage for himself as a business owner, but he chose not to. *See id.* § 176.041, subd. 1a(a). If, then, a business owner is only an employee under the Act when the owner elects coverage, Jason would not be an employee for purposes of the Workers' Compensation Act. And the coemployee immunity provision only applies to coemployees—two employees working for the same employer. *See id.* § 176.061, subd. 5(e). As a result, if Jason were not an employee under the Workers' Compensation Act, he may not be a coemployee to Jacob for the purposes of coemployee immunity. That said, the parties do not dispute that the Workers' Compensation Act governs in this case. Niebuhr did not appeal the district court's determination that Jacob was entitled to summary judgment under the coemployee immunity provision, and Niebuhr conceded at oral argument that we may consider Jason and Jacob coemployees for this appeal. We therefore assume without deciding that the coemployee immunity provision of the Workers' Compensation Act applies.

the plain terms of the coemployee immunity provision because it only extends immunity to coemployees, and Jason and the Siebergs were not coemployees.

Resolving this issue depends on whether the coemployee immunity provision functions as a personal immunity from liability or rather as a release from liability. As discussed earlier, the Safety Responsibility Act imposes vicarious liability on a motor vehicle owner for a permissive driver's conduct, even if the driver is immune from liability for that conduct. However, we have also recognized that an agent's release from liability—rather than immunity from liability—releases a principal from vicarious liability. *See Booth v. Gades*, 788 N.W.2d 701, 707 (Minn. 2010) ("The well-established common law rule is that the release of the agent releases the principal from vicarious liability."). If the coemployee immunity provision acts as a release from liability, then the Siebergs would be released from liability. The resolution of this issue therefore necessitates a discussion of the difference between immunity from liability and a release from liability.

Immunity is an "exemption" from liability, often based on one's status and derived from statute or common law. *See Immunity, Black's Law Dictionary* (12th ed. 2024) (defining immunity as "[a]n exemption from a duty, liability, service of process, or possibility of prosecution" which is "often granted to public officials and government units," and providing examples of immunity derived from the Constitution, statute, and common law); *see also, e.g.*, *Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn. 1997) ("The traditional basis for immunity is that though the defendant might be a wrongdoer, social

values of great importance required that the defendant escape liability." (citation omitted) (internal quotation marks omitted)).

By contrast, a release is the relinquishment of a right or claim, typically arising by agreement between the parties in a particular situation. *See Release, Black's Law Dictionary* (12th ed. 2024) (defining release as the "[l]iberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced"); *see also, e.g.*, *Gronquist v. Olson*, 64 N.W.2d 159, 163–64 (Minn. 1954) (defining "release" as "a relinquishment, concession, or giving up of a right, claim, or privilege, *by the person in whom it exists, to the person against whom it might have been enforced*" (emphasis added)); *Booth*, 788 N.W.2d at 702 (describing agreement between the parties that "release[d] all claims against the settling tortfeasor").

We conclude that Minn. Stat. § 176.061, subd. 5(e), functions as an immunity rather than a release. First, the statute's plain language states that a coemployee "is not liable" for negligently injuring another, not that the coemployee is "released" from liability. Minn. Stat. § 176.061, subd. 5(e). This language more closely aligns with immunity rather than release. Second, the Workers' Compensation Act is *not* an agreement between private parties. Although we have described the right to compensation as "contractual in nature," *Lunderberg v. Bierman*, 63 N.W.2d 355, 365 (Minn. 1954), employers and employees do not personally negotiate whether to abide by the coemployee immunity provision. "Workers' compensation is entirely a creature of statute and reflects legislative balancing of the interests of employees and employers." *Profit v. HRT Holdings*, 987 N.W.2d 575, 584 (Minn. 2023). Unlike a contractual release, the

18

coemployee immunity provision is not the product of mutual agreement among employees working for the same employer regarding which rights to give up with one another. It is not the "relinquishment" of a claim "by the person in whom it exists, to the person against whom it might have been enforced," and, therefore, it is not a release. *See Gronquist*, 64 N.W.2d at 163–64. We conclude that coemployee immunity under the Workers' Compensation Act is a personal immunity from liability rather than a release from liability and hold that vehicle owners may still be liable under the Safety Responsibility Act even when their permissive drivers are personally protected by coemployee immunity.[14]

C.

In reaching the same holding that we reach today, the court of appeals acknowledged that such a holding lies in tension with a nonprecedential decision from its own court: *Guess v. Priore*, No. A05-2467, 2006 WL 2474095 (Minn. App. Aug. 29, 2006). *Niebuhr*, 16 N.W.3d at 123–24. The district court had relied on *Guess* when concluding that because Jacob had coemployee immunity under the Workers'

---

[14]     Niebuhr argues that several other states impose liability on motor vehicle owners for the conduct of a permissive driver, even when the driver was immune from liability. Niebuhr also asserts that states reaching the opposite conclusion do so because their workers' compensation statutes are distinguishable from the Minnesota Workers' Compensation Act. We agree with the Siebergs that these cases are inapt. Our holding rests solely on our own precedent. We need not, and do not, consider the law in other states to conclude that Minnesota's coemployee immunity provision does not protect motor vehicle owners who would otherwise be vicariously liable for the coemployee's conduct under the Safety Responsibility Act.

Compensation Act, the Siebergs could not be vicariously liable under the Safety Responsibility Act.

In *Guess*, the court of appeals considered whether an aircraft owner could be held vicariously liable for a pilot's conduct when the pilot was protected by coemployee immunity under the Workers' Compensation Act. 2006 WL 2474095, at *4. The statute imposing vicarious liability on aircraft owners for an operator's conduct did so by establishing a principal-agent relationship, which is substantially the same as the Safety Responsibility Act. *Id.* (applying Minn. Stat. § 360.0216, which states, "[w]hen an aircraft is operated … by a person other than the owner, with the consent of the owner, expressed or implied, the operator shall in case of accident be deemed the agent of the owner of the aircraft in its operation"). The court of appeals concluded that the aircraft owner could not be vicariously liable for the pilot because "[i]f the underlying liability does not exist, there can be no vicarious liability." *Id.* To reach this conclusion, the court of appeals relied on *Reedon of Faribault, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.*, 418 N.W.2d 488, 498 (Minn. 1988). *See Guess*, 2006 WL 2474095, at *4.

In *Reedon*, we held that a *Pierringer* agreement releasing an insurer's agent from liability also released the principal insurer from vicarious liability. 418 N.W.2d at 491. "A *Pierringer* agreement allows a plaintiff to release a settling defendant and to discharge a part of the plaintiff's cause of action while reserving the balance of the cause of action against the nonsettling defendants." *Id.* at 490. A *Pierringer* release is a creature of contract. As is typical of releases, one party agrees to relinquish the right it would otherwise have against another party.

20

Here, the court of appeals concluded that *Reedon* was inapt because that case relied on principles of contract interpretation that are inapplicable, and therefore the court of appeals' nonprecedential decision in *Guess*, relying on *Reedon*, was unpersuasive. *Niebuhr*, 16 N.W.3d at 124. We agree. By relying on *Reedon* for the proposition that an agent's lack of liability cuts off a principal's vicarious liability, *Guess* effectively interpreted the coemployee immunity provision under the Workers' Compensation Act like a contractual release. We conclude, however, that coemployee immunity under the Workers' Compensation Act is not akin to a contractual release, and we repudiate *Guess* to the extent it holds that the coemployee immunity provision cuts off the possibility for vicarious liability.

The Siebergs further argue that interpreting the coemployee immunity provision as a grant of personal immunity, which does not extend to third parties, is contrary to the purpose of the Workers' Compensation Act. They argue that it would create a loophole in coemployee immunity by shifting the burden of workplace injuries to third parties, who may share assets with or seek indemnity from the negligent employee. The Siebergs argue the effect of such a loophole would shift the burden back onto the negligent employee who was immune from direct liability.

The Sieberg's argument is not persuasive, for two reasons. First, it concerns the consequences of a statute's particular interpretation, which we do not consider unless we first determine that the plain language of the statute is ambiguous. *See* Minn. Stat. § 645.16(6) ("When the words of a law are not explicit, the intention of the legislature may be ascertained by considering … the consequences of a particular

21

interpretation ….”); *Riggs*, 865 N.W.2d at 682 n.3, 683 n.4 (explaining that canons of construction, such as those listed in Minn. Stat. § 645.16, “may be considered only after concluding that a statute is ambiguous”). We discern no ambiguity in the plain language of the coemployee immunity provision.

Second, it is not apparent that an indemnity claim by a motor vehicle owner against a driver who is protected by coemployee immunity would contradict the purpose of the Workers’ Compensation Act. In *Lunderberg*, a motor vehicle owner brought her car to a garage for maintenance. 63 N.W.2d at 357. Two of the garage’s employees took the vehicle for a drive and crashed it. *Id.* After collecting benefits under the Workers’ Compensation Act, one the employees injured in the crash sued the motor vehicle owner, alleging she granted permission for the driver to operate the car. *Id.* We determined that the Workers’ Compensation Act did not prevent the motor vehicle owner from seeking indemnity from the garage owner because the Workers’ Compensation Act “was not intended to affect the rights of other parties not standing in the relationship of employer and employee” unless expressly stated in the act itself. *Id.* at 365. The Siebergs argue that “[w]hile *Lunderberg* recognizes the Workers Compensation Act cannot limit the rights of third parties, it says nothing about the liabilities of third parties.” This is a distinction without a difference. Both in *Lunderberg* and here, the Safety Responsibility Act is the source of liability. The Workers’ Compensation Act does not limit that liability.

The Siebergs’ concern that a negligent employee could ultimately be liable to someone outside of the workers’ compensation bargain involves a policy issue that is best presented to the Legislature due to the conflicting interests at stake. *See State v. Khalil*,

22

956 N.W.2d 627, 633 (Minn. 2021) ("[L]egislative bodies are institutionally better positioned than courts to sort out conflicting interests and information surrounding complex public policy issues.").

In sum, coemployee immunity is a personal immunity from liability rather than a release from liability. As such, the Safety Responsibility Act allows for a vehicle owner to be held vicariously liable for the tortious conduct of a permissive driver who is protected by the coemployee immunity provision. Therefore, Jacob's immunity under the Workers' Compensation Act is personal to him and does not protect the Siebergs from vicarious liability for Jacob's conduct under the Safety Responsibility Act.

*     *     *

The Safety Responsibility Act, Minn. Stat. § 169.09, subd. 5a, deems a permissive driver to be the agent of a vehicle owner. This means a vehicle owner may be vicariously liable for the wrongful conduct of that driver even when the driver is personally immune from liability. The coemployee immunity provision, Minn. Stat. § 176.061, subd. 5(e), of the Workers' Compensation Act grants an employee immunity from liability for negligently injuring a coemployee. Accordingly, the Workers' Compensation Act does not bar an injured employee from pursuing a claim against a motor vehicle owner for vicarious liability under the Safety Responsibility Act arising out of the operation of the motor vehicle, even when the vehicle's driver is immune from liability under the coemployee immunity provision. In so holding, we adhere to the Legislature's decision to define the scope of coemployee immunity and decline to enlarge that immunity beyond the limits the Workers' Compensation Act expressly provides. Jacob's coemployee

23

immunity under the Workers' Compensation Act does not protect the Siebergs from being held vicariously liable under the Safety Responsibility Act.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

HENNESY, J., took no part in the decision of this case.